Canandaigua National Bank and Trust Company, Respondent, v. Commercial Credit Corporation, Appellant.

Fourth Department, November 17, 1954.

*William G. Scott* for respondent.

*Martin H. Buecking* and *Berthold Muecke, Jr.,* for appellant.

PIPER, J. This is an action of replevin for an automobile. Defendant, acting as an entruster pursuant to the Uniform Trust Receipts Law (Personal Property Law, § 50 *et seq.*), has financed the wholesale purchase of automobiles by one Farrell, a retailer doing business as Farrell Motors. Farrell and Farrell Motors are the same person. On August 29, 1952, the parties executed a statement of trust receipt financing signed by Farrell as trustee and by defendant as entruster. This statement, which was filed with the Secretary of State on September 5th, was in the form permitted by section 58-e of the Personal Property Law. On November 28th at Farrell's request defendant purchased from a distributor one 1953 Austin automobile at the dealer's price of $1,510. A trust receipt was then prepared, reserving to defendant as entruster a security interest in the Austin to the extent of $1,510. Farrell Motors as trustee agreed to hold the

car in trust for defendant and to return it unused on demand, to keep it free from all incumbrances, and to account for the proceeds of sale, if sold in the usual course of business.

On December 3, 1952, Farrell went to the plaintiff bank. He told plaintiff's vice-president that he wanted to transfer the car from Farrell Motors to John Farrell personally " so that it could go on the road without dealer plates ". While plaintiff had done other business with Farrell, its vice-president denied knowing that he was the sole proprietor of Farrell Motors. It is quite clear that Farrell, far from desiring a car for personal use, wished to raise money on the Austin. In fact, it was never removed from the showroom until defendant repossessed. Plaintiff made no effort to determine whether Farrell was engaged in trust receipt financing. The following transaction was then entered into: Farrell Motors as " Seller " and John Farrell as " Buyer " executed a " conditional sales contract ". The " bona fide cash selling price " was listed as $2,295. Actually the car retailed at $1,845, but plaintiff denied knowing its value. The contract recited a down payment (from Farrell to himself) of $895, leaving an unpaid balance of $1,400. The sales contract was signed by Farrell and Farrell Motors " By John E. Farrell." Plaintiff's vice-president was present and saw this unique document executed. Attached to the contract was a nonnegotiable " conditional sales contract note " by which Farrell promised to pay the unpaid balance to the order of Farrell Motors and agreed that title should remain in the " payee " and assigns until the debt was fully paid. At the same time and as a part of the same transaction, Farrell Motors (by " John E. Farrell ") assigned to the plaintiff " the foregoing contract and all right, title and interest in and to the property therein described and all rights and remedies thereunder; and the undersigned does hereby guarantee the payment of the foregoing contract ". In consideration of the above, plaintiff paid out $1,400 in cash.

On January 6, 1953, defendant repossessed the car, as it was entitled to do under the trust receipt. This action resulted. The trial court found: (1) the transaction between Farrell and himself was not a bona fide sale, and Farrell never became a " buyer in the ordinary course of trade "; (2) plaintiff acquired the contract and note for value, in good faith, and without knowledge of any limitation on the trustee's right to sell.

Section 57 of the Personal Property Law provides that if the entruster files within thirty days after delivery of the goods to the trustee, his security interest is preserved as against all per-

sons except as otherwise provided in succeeding sections. Subdivision 1 (par. [a]) of section 58-a preserves the rights of holders in due course of negotiable instruments and documents of title and provides that " purchasers taking from the trustee for value, in good faith, and by transfer in the customary manner instruments in such form as are by common practice purchased and sold as if negotiable, shall hold such instruments free of the entruster's interest; and filing under this article shall not be deemed to constitute notice ".

The trial court regarded the plaintiff bank as a bona fide purchaser of " instruments in such form as are by common practice purchased and sold as if negotiable ". There may be some doubt whether plaintiff acted in entire good faith. Furthermore, a conditional sales contract does not qualify as an " instrument " under subdivision 5 of section 51 of the Personal Property Law. It has also been denied that conditional sales contracts are commonly " purchased and sold as if negotiable." (*General Motors Acceptance Corp.* v. *Associates Discount Corp.*, 38. N. Y. S. 2d 972, 978, revd. on other grounds, 267 App. Div. 1032.) The rule has always been that the assignee is subject to all of the duties and liabilities of the original seller. At any rate, the decision below is " predicated on the assumption that the transaction between [Farrell and himself] had the legal effect it might have if it were genuine, and that plaintiff was under no duty or burden to safeguard itself against a fraudulent or pretended sale ". (*General Credit Corp.* v. *Kapun*, 237 App. Div. 694, 697.) While a conditional seller may undoubtedly assign his interest to a third party, in this case there is no conditional seller. A man cannot contract with himself. (*Persky* v. *Bank of America Nat. Assn.*, 261 N. Y. 212, 219.) As between Farrell and himself the purported conditional sale was completely ineffective to separate a security interest from the beneficial ownership. The same reasoning applies to the note. " Where a note is drawn to the maker's own order, it is not complete until indorsed by him." (Negotiable Instruments Law, § 320.) The first indorsee is treated as the payee. (*Madison Bank* v. *Pierce*, 137 N. Y. 444.) So long as Farrell merely promised to himself, there was no contract or note for want of inception. By the " assignment " plaintiff doubtless purchased an interest in the goods. But it did not " purchase " the contract and note. There was nothing to purchase. It became, instead, an original party to the contract. For that reason we conclude that the court below erred in deciding the case on the basis of subdivision 1 of section 58-a of the Personal Property Law.

The transaction between Farrell and plaintiff, viewed as a whole, amounted to a chattel mortgage. It was Farrell's intent to raise money on the security of the Austin. The arrangement was put into the form of a fictitious conditional sale between Farrell and himself and an assignment of the " conditional seller's " title to plaintiff as security for the loan. Neither plaintiff nor Farrell is a conditional seller. The transaction was in substance a chattel mortgage, as any experienced banker must have known. The courts have been alert to efforts to disguise a chattel mortgage as a conditional sale. (*Matter of James, Inc.,* 30 F. 2d 555.) The conditional sale may be employed only " where persons standing in the actual relation of vendor and vendee have desired to effect a credit sale. It is in such cases that it finds its only legitimate use. Where, on the other hand, one who is the owner of a particular chattel wishes to borrow money and is willing to let the chattel stand as security for his debt, a chattel mortgage is the appropriate means for affording such protection to the creditor." (*Hughbanks, Inc.,* v. *Gourley,* 12 Wash. 2d 44, 49; see, also, *Raymond* v. *Horan,* 323 Ill. App. 120 and *Susman* v. *Whyard,* 149 N. Y. 127.) We believe that plaintiff is a chattel mortgagee. It certainly is nothing else. It entered the picture solely as a financier and not as a dealer in automobiles. The substance of the arrangement was that Farrell, being the beneficial owner of the Austin, mortgaged it to plaintiff as security for a loan.

The rights of chattel mortgagees are governed by subdivision 2 (par. [b]) of section 58-a of the Personal Property Law. The rule is thus stated by the Commissioners on Uniform State Laws (1933 Handbook of National Conference of Commissioners of Uniform State Laws and Proceedings, p. 253): " After filing, no pledgee, mortgagee or transferee in bulk can take free of the entruster's interest. The reason is clear: All of these are persons whose business it is to look up the status of any trustee with whom they are dealing." The result would be the same even if the entruster had not filed, because plaintiff never obtained possession of the car.

The judgment must be reversed and the complaint dismissed.

All concur. Present — VAUGHAN, J. P., KIMBALL, PIPER, WHEELER and VAN DUSER, JJ.

Judgment reversed on the law and facts, with costs, and complaint dismissed, with costs.