JOHNSTOWN BANK, Respondent, v. AMERICAN SURETY COMPANY OF NEW YORK, Appellant.

Third Department, May 23, 1958.

*F. Walter Bliss* and *William D. Ferguson* for appellant.

*A. Page Smith* and *Walter J. Hogan* for respondent.

FOSTER, P. J.   This is an appeal by the defendant surety company, from a judgment entered against it by the plaintiff bank under the terms of an instrument known as a "Bankers' Blanket Bond".

The respondent bank took by assignment, without recourse, certain conditional contracts of sale from a car dealer. Each conditional contract bore a genuine signature of a purported buyer but the details relative to the purchase of a car and the amounts to become due therefor were, with one exception, entirely fictitious. It appears that the car dealer had procured friends and relatives to sign the contracts in blank but no actual sales were made. Employees of the bank filled in the appropriate blanks on each contract to indicate a description of the car purported to be conditionally sold and the terms of the purchase price. The information for these details was furnished by the car dealer to an employee of the bank. There is no evidence that any one connected with the bank saw or talked with any alleged buyer prior to the assignment of any contract. After each assignment, however, the bank sent to the apparent purchaser in each instance a statement of the transaction, and a coupon book to be used in connection with installment payments. The dealer picked up the coupon book from each fictitious purchaser and whatever payments were made to the bank on any purported sale he made himself. In no instance did the supposed purchaser make any payment. On the books of the bank the transactions were set up as loans.

There came a time when a trust officer of the bank learned of the fictitious character of the conditional sales agreements which the bank had purchased, and thereupon the bank called upon the appellate surety company to make good its losses under a blanket bond given to the bank. The latter denied liability on the ground that its bond did not cover losses on loans, spurious or otherwise. This lawsuit then ensued with judgment for the respondent.

The bond in question is entitled " Bankers Blanket Bond — Standard Form No. 24 ". It has this to say about losses resulting from loans:

" Section 1
    " This Bond does not cover:
        " (d) Any losses the result of the complete or partial nonpayment of, or default upon any loan made by, or obtained from the Insured, whether procured in good faith or through trick, artifice, fraud or false pretenses, except when covered by Insuring Clauses (A), (D) or (E)."

The trial court held that the transactions in question were not loans, and hence that the exclusion clause quoted did not apply; that the transactions constituted a series of larcenies for which

the appellant surety company was liable under clause (B) of the bond.

We are of the opinion that on this record the trial court's ruling was correct. For the purpose of exploring the problem let us assume that each instrument was genuine in character, but even so each transaction lacked the essential elements of a loan as that term is ordinarily understood and as the trial court reasoned (*Payne* v. *Gardiner,* 29 N. Y. 146). A conditional sales agreement is not usually considered a loan (*Lamula* v. *Morris Plan Ind. Bank,* 173 Misc. 874). It merely represents the terms of sale of personal property on time, and as such is not ordinarily subject to the ban against usury as would be the case if it were a loan. It is not negotiable, at least so far as the form used in this case is concerned, for it provides that the buyer is to pay all taxes and assessments on the car purchased, thus making the ultimate amount due uncertain (Negotiable Instruments Law, § 20; *Persky* v. *Bank of America Nat. Assn.,* 261 N. Y. 212). Thus, if the instrument was legitimate all that the bank had in each case was a claim against the buyer for the unpaid purchase price of personal property. The cases which appellant cites to sustain its position that the transactions were loans dealt, as we read them, with bills or notes that were negotiable in form (*Miller* v. *Discount Factors,* 1 N Y 2d 275; *Meserole Securities Co.* v. *Cosman,* 253 N. Y. 130).

Appellant urges that the bond in question should be construed in the light of the circumstances that it is a bankers' bond and relates to banking business. With that statement we agree (*Utica City Nat. Bank* v. *Gunn,* 222 N. Y. 204). If there were proof in this case that it was a universal or general banking custom to classify conditional sales agreements, purchased by and assigned to a bank without recourse, as loans, then there would be considerable force to the argument that the bond in question was written in the light of such custom and usage, and that the exclusion clause should bind the respondent bank. While we suspect that such a custom or usage exists there is no proof thereof in this record, and we may not take judicial notice of such custom or usage. The only proof on the subject is that the respondent bank classified the transactions in question as loans on its own books, but that proof is insufficient to establish a general banking usage. In the absence of such proof the trial court was relegated to general principles and definitions with respect to loans, and under such general principles a conditional sales agreement, as we have heretofore pointed out, is not regarded as a loan.

8

The trial court did not find it necessary to determine whether the spurious transactions were forgeries within the insuring provision of the bond (E), and likewise we do not pass upon that issue in view of the foregoing observations.

Appellant urges finally that even in the event of liability the computation of damages as made by the trial court is incorrect. This argument is made upon the basis that in nine cases the respondent bank had old valid conditional sales agreements or chattel mortgages which were paid off as a part of the transactions in question and the dealer paid the difference in each instance between the spurious purchase price and that due on the old contract of the same purchaser. The old contracts, appellant says, were cancelled under the mistaken belief that such persons had purchased a new car, and are still valid and subsisting obligations. This argument amounts, in effect, to saying that the bank should exhaust its remedies on such old contracts before it can call upon the appellant surety company to make good any losses in connection therewith. We do not think that under the terms of the bond that respondent was or is obliged to take such a course. It may well have good causes of action against not only the car dealer, but also against the signers of the fictitious agreements, for losses occasioned by fraud but it is not required, in our opinion, to press them in order to save the appellant. And the same applies to old contracts that were cancelled as a part of the fraudulent transactions. The bank is, if we read the bond correctly, entitled to recover its losses from the transactions as they existed at the time the fraud was discovered, but, of course, the appellant is probably entitled by way of subrogation to any remedies which the respondent may have.

The judgment should be affirmed, with costs.

BERGAN, COON, GIBSON and REYNOLDS, JJ., concur.

Judgment affirmed, with costs.