**In the Matter of YALE EXPRESS SYSTEM, INC., Debtor.**

**FRUEHAUF CORPORATION, Appellant,**

v.

**YALE EXPRESS SYSTEM, Appellee.**

**No. 165, Docket 30707.**

United States Court of Appeals
Second Circuit.

Argued Nov. 9, 1966.

Decided Dec. 16, 1966.

Marvin F. Hartung, New York City, (Myron D. Cohen, Conboy, Hewitt, O'Brien & Boardman, New York City, on the brief), for appellant.

William R. Glendon, New York City, (Caesar L. Pitassy, David W. Bernstein, Royall, Koegel & Rogers, New York City, on the brief), for appellee.

Before LUMBARD, Chief Judge, MEDINA and KAUFMAN, Circuit Judges.

IRVING R. KAUFMAN, Circuit Judge.

This appeal seeks to have us determine whether a creditor, armed with a secur-

ity interest perfected under the Uniform Commercial Code, is entitled to reclaim property held by the trustee for a debtor being reorganized under Chapter X of the Bankruptcy Act.

The basic facts underlying the present controversy are not in dispute. At various times during the summer and fall of 1964, the Yale Express System ("Yale"), purchased 50 trailers and 62 truck bodies from the Fruehauf Corporation ("Fruehauf"). The cost of these vehicles was $379,208.50. Yale agreed to make cash payments 30 days after delivery of each unit of truck bodies and 90 days delivery after each unit of trailers.

Fruehauf contends that in extending this credit it relied on information furnished in a Dun & Bradstreet report issued on June 9, 1964, with respect to Yale's financial state. That report, which rated Yale as "Aa A1," summarized the consolidated financial statement prepared by Yale's certified public accountants, Peat, Marwick, Mitchell & Company, for the year ending December 31, 1963. This statement disclosed that Yale's net income for 1963 was $1,140,665.

In February 1965, approximately two months after delivery to the debtor of the last piece of equipment, Fruehauf was told by Yale's representatives that the financial statement for the year ending December 31, 1963 was inaccurate. Fruehauf's auditors announced that Yale's operations for 1963, originally reported as showing a profit in excess of $1,000,000., had resulted, in fact, in a net loss of $1,254,602. Upon learning of this, Fruehauf took the position that it had a right to reclaim the trailers and truck bodies it had sold to Yale on credit. Thereafter, negotiations ensued between the two parties, and eventually an agreement was entered into on March 26, 1965. In it Fruehauf waived its asserted right to reclaim the trailers and truck bodies, and allowed Yale to pay for the equipment on an installment basis over a period of 68 months. To secure these payment obligations, Yale gave Fruehauf chattel mortgage liens on the trucks and trailers. These security interests were duly filed in accordance with the provisions of the New York Uniform Commercial Code ("Code").[1]

Two months later, on May 24, 1965, Yale filed a petition for reorganization under Chapter X of the Bankruptcy Act. On October 11, 1965, Fruehauf, claiming that Yale had failed to make 5 of the required installment payments that had become due, informed Yale's trustee that it was exercising its right under the security agreements to repossess the collateral. A formal demand was made for immediate possession, but the trustee refused to release the collateral valued at $380,000., on which less than $15,000. had been paid.

Following this refusal, Fruehauf filed its Petition for Reclamation in Yale's Chapter X proceedings. Judge Tyler there concluded that even if he assumed that Fruehauf had a valid security interest, it would not be entitled to reclaim unless it demonstrated that the trucks and trailers were not the "property of the debtor." He went on, "[S]ince this court must follow the still viable appellate decisions in point, the distinction between a chattel mortgage and a conditional sale must remain operative for the purpose of determining what property is 'property of the debtor'." 250 F.Supp. 249, 254 (S.D.N.Y. 1966).

Judge Tyler held that the security agreements, which were in the form of chattel mortgages, were intended to give Fruehauf only a "lien," and therefore the vehicles were the property of Yale. Moreover, the District Judge found cogent "equitable" reasons for not forcing Yale to surrender possession of the collateral, and, accordingly, denied the Petition for Reclamation. This appeal followed.

### I.

■ A reclamation proceeding is designed to "afford the opportunity to

1. The Uniform Commercial Code became effective in New York on September 27, 1964.

claimants not in possession to assert their claims or title to various property in the hands of the trustee or receiver and thus regain possession thereof." 4 Collier, Bankruptcy ¶ 70:39, p. 1302 (1964). More than thirty years ago, in the leading case of In re Lake's Laundry, Inc., 79 F.2d 326 (2d Cir.), cert. denied, sub nom. Lake's Laundry v. Braun, 296 U.S. 622, 56 S.Ct. 144, 80 L.Ed. 442 (1935), this Court decided that property sold under a conditional sales contract was not "property of the debtor. For that reason it is not a part of the subject-matter of the reorganization * * *." Id. at 328. The conditional seller there was permitted to reclaim his property.

The rationale and holding of In re Lake's Laundry were subsequently adopted by the courts in other Circuits as well. See, e. g., In re Sun Cab Co., 67 F.Supp. 137 (D.D.C.1946). "The rule is well-settled that the property of a third person in the possession of the bankrupt, where proper proof of valid title is shown by the claimant, should not be included in the assets of the bankrupt's estate, but should be restored to the claimant." Collier, supra at 1303 (footnote omitted).

But, the courts have been fairly consistent in denying reclamation where the petitioner only had a lien on the property, rather than title to it, and repossession would, in the court's opinion, jeopardize the reorganization. See, e. g., In re United States Realty & Improvement Co., 153 F.2d 853 (2d Cir. 1946); Lincoln-Alliance Bank & Trust Co. v. Dye, 108 F.2d 38 (2d Cir. 1939). Where the petitioner is merely the holder of a lien reclamation will be allowed, nevertheless, if the court concludes that such relief is equitable under the circumstances. See In re Sun Cab Co., supra (dicta).

## II.

This judicially developed doctrine that a creditor's right to reclamation is dependent on who has "title" to the property, has not gone unchallenged. See generally, Coogan, Hogan & Vagts, "Secured Transactions Under the Uniform Commercial Code" 978–80 (1963). It is not inappropriate to note that the decision in In re Lake's Laundry, supra, was reached only over the dissent of Judge Learned Hand. With his usual keen insight he stated:

It seems to be a barren distinction, though indubitably true, that title does not pass upon a conditional sale; "title" is a formal word for a purely conceptual notion; I do not know what it means and I question whether anybody does, except perhaps legal historians. The relations resulting from conditional sales are practically the same as those resulting from mortgages; I would treat them as the same when we are dealing with the reorganization of the debtor's property. 79 F.2d at 328–29.

Judge Hand postulated that the reorganization court should be able, in the exercise of its equitable discretion, to refuse the conditional vendor's request to reclaim property held by the trustee.

Perhaps the distinction drawn by the majority in *In re Lake's Laundry* between conditional sales agreements and other security arrangements, was defensible at the time, in light of the important consequences that the various commercial laws of the states attached to the particular form of the security agreement. But the body of commercial law has not stood still. It has made great and progressive strides, and 47 states, the District of Columbia, and the Virgin Islands have now enacted the Uniform Commercial Code.[2] Section 9–

2. The desirable goal of a uniform code was proposed in 1940 by the National Conference of Commissioners on Uniform State Law. The American Law Institute subsequently joined the Commissioners in the project. At present, only Arizona, Idaho and Louisiana have not enacted the Uni-form Commercial Code. Legislation is expected to be enacted in Arizona and Idaho in 1967; and the Louisiana State Law Institute is presently studying the Code, but early adoption is not contemplated. See 3 UCC Reporting Service, Release 5, July 6, 1966, p. 1. In an effort to

202 declares the policy of Article 9 of the Code stating that "[e]ach provision of this Article with regard to rights, obligations and remedies applies whether title to collateral is in the secured party or in the debtor." In short, it does not matter whether the security agreement is in the form of a chattel mortgage or a conditional sales contract. In either case, the secured party has the right upon default by the debtor to take possession of the collateral (§ 9–503) and to sell, lease or otherwise dispose of it, applying the proceeds to the indebtedness (§ 9–504).

Even more relevant to our particular inquiry is the Official Comment to § 9–507 of the Code:

[A] power [to control the manner of disposition of the debtor's property] is no doubt inherent in a Federal bankruptcy court, and perhaps in other courts of equity administering insolvent estates. Traditionally it has not been exercised where the secured party claimed under a title retention device, such as a conditional sale or a trust receipt. See In re Lake's Laundry, Inc., 79 F.2d 326 (2d Cir. 1935) and the remarks of Clark, J., concurring, in In re White Plains Ice Service, Inc., 109 F.2d 913 (2d Cir. 1940). But since this Article adopts neither a "title" nor a "lien" theory of security interests (see Section 9–202 and Comment thereto), the granting or denying of, for example, petitions of reclamation in bankruptcy proceedings should not be influenced by speculations as to whether the secured party had "title" to the collateral or "merely a lien".

■ The "Official Comments" of the Code are, of course, not binding on a federal court which is in the process of exercising its equitable discretion in a reclamation proceeding. But, they are powerful dicta for the Code is "well on its way to becoming a truly national law

of commerce," and is, therefore, as we have noted, a most appropriate source of federal law. United States v. Wegematic, 360 F.2d 674, 676 (2d Cir. 1966). We would indeed be myopic if we failed to recognize the revolution in commercial law that the Uniform Commercial Code has occasioned in the states. It would be incongruous for the federal courts, historically the leaders in the development of the law, to continue to employ anachronistic distinctions to determine whether a creditor is entitled to redeem property held by the trustee when the overwhelming number of states have succeeded in bringing their laws more into line with commercial reality. The Court of Appeals for the Third Circuit recently recognized the enlightened teachings of the Uniform Commercial Code:

The Uniform Commercial Code was designed to bring the body of commercial law into the contemporary world of business. * * * It would hardly be consistent with that design * * * to reestablish in new form limitations which reflect a passion for legal technicality over commercial reality. * * * The Code has eliminated the older, technical and restricted categories of security agreements. Gone are the definitional difficulties and transactional fictions of the chattel-mortgage, the conditional sale, the trust receipt. In their stead is a general set of rules for the creation of a security interest in the secured party. (In the Matter of United Thrift Stores, Inc., 363 F.2d 11, 14 (3 Cir. 1966))

■ We, therefore, in keeping with the developments in the body of recent commercial law, conclude that Fruehauf's right to reclaim the trailers and truck bodies cannot hang on whether its security agreement is labeled a "conditional sales contract" or a "chattel mortgage." Since the Uniform Commercial Code has abolished the technical distinc-

---

achieve and maintain uniformity in the Commercial Code of the various states, a Permanent Editorial Board for the Code was created in 1962, headed by William

A. Schnader, who, since 1940, has spearheaded the campaign for the adoption of a Uniform Commercial Code.

tions between the various security devices, the federal bankruptcy courts should no longer feel compelled to engage in the purely theoretical exercise of locating "title;" nor should considerations of where "title lies" influence the courts in the exercise of their equitable discretion. Rather, the bankruptcy courts should assume their proper equitable function of scrutinizing the particular circumstances surrounding each petition for reclamation, in order to arrive at a just determination.[3] Equitable considerations and the *substance* of the transaction should govern, regardless of the *form* of the security agreement.[4]

## III.

■ It remains for us only to apply these principles to the present case.

**3.** We note that the Code was not intended to supersede the Federal Bankruptcy Act, or to limit the powers of the federal bankruptcy courts. As the 1956 Report of the New York Law Revisions Commission noted:

It is incredible that any court would ever construe the default provisions of Code Article 9 as overriding any provisions of existing assignment or insolvency statutes (cf. Comment 1 to § 9–507, second paragraph). It will be hereinafter assumed, therefore, that the rights of secured creditors under the Code would be subject, in general, to being affected by operation of constitutionally valid insolvency laws. (Legislative Document No. 65 (1956), "Report Relating to the Uniform Commercial Code" p. 104.)

**4.** A similar conclusion was recently reached in a Note discussing the district court's holding in this case. The writer commented:

*Yale* indicates that a reluctance to deal with substance can * * * frustrate legitimate bankruptcy objectives. * * * [The court] looked to the form of the security agreement to locate "title," and thus it retained the distinctions between the chattel mortgage and the conditional sale in deciding whether the creditor would be permitted to reclaim the equipment. This represents a serious limitation on the effectiveness of the bankruptcy courts in reorganization proceedings; its foundation should therefore be examined.

Judge Tyler in his opinion denying the petition for reclamation noted that there were "cogent equitable reasons why Yale should not be forced to give up possession of this property at this time." 250 F.Supp. at 255. It is not clear from the opinion, however, whether his denial was influenced, at least in part, by his erroneous finding that the trucks and trailers were the "property" of Yale, or was wholly grounded in equitable principles. Judge Tyler's failure to mention any of the equities existing in Fruehauf's favor strongly indicates that his decision rested heavily on the finding that Yale had "title" to the vehicles. We, therefore, find it necessary to reverse Judge Tyler's order, and to remand the case to the district court to decide, in light of this opinion, whether Fruehauf is entitled to reclamation.

* * * * * * *

By continuing to acknowledge this distinction [between "title" and "lien"], the bankruptcy courts tend to limit the Code's abolition of distinctions which are no longer necessary for ordinary commercial practice. * * * It should be recognized that it is the courts, and not the [Bankruptcy] act itself, which equate "property" with "title." In so doing, they are permitting the perhaps otherwise meaningless choice of printed forms to determine whether equipment vital to a successful reorganization can be protected from reclamation until the reorganization is accomplished. Conversely, of course, the choice of forms is no longer "meaningless," as all secured parties will endeavor to use a title retention device in the future.

Surely there is ample reason to reexamine the *Lake* case in the light of present day chattel security law. Any support which that decision may have derived from state law is absent under the Code; indeed the Code provides exactly the opposite. In any event, if the rehabilitation of the debtor will serve a more useful end, it hardly seems appropriate to risk liquidation, with a potentially greater loss to creditors in general, when it could be avoided by putting this aspect of the debtor-creditor relationship into a more realistic perspective.

Note, The Code in the Bankruptcy Courts: Some Significant Conflicts of Policy," 8 Boston Coll. Indust. & Comm. L.Rev. 101, 110–12 (1966).

Even if Judge Tyler finds that the equities favor Yale's retention of the property, he need not conclude that Fruehauf is entitled to no relief at all. Consideration should be given by the district judge, for example, to the propriety of requiring Yale to make rental payments for the use of the trucks and trailers during the period of reorganization. It is true, as Judge Lumbard states, that in the past bankruptcy courts have been reluctant to award such rental payments; but the considerations underlying this reluctance may well be different now in light of our holding that a creditor cannot assure himself the right to reclaim merely by labeling his security device a conditional sales contract.

### IV.

One final point remains to be considered. In the district court, Judge Tyler assumed that Fruehauf had a valid security interest. Yale contends here, however, that the security interest which it gave Fruehauf in March 1965 is voidable as a preference. Section 60(a) (1) of the Bankruptcy Act, 11 U.S.C. § 96(a)(1), defines a preference as:

a transfer * * * of any of the property of the debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition initiating a proceeding under this title, the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class.

Under § 60(b), 11 U.S.C. § 96(b), the trustee is given the right to void any preference granted to a person who had reasonable cause to know that the debtor was insolvent.

 The transfer of the security interest in the present case was made within four months of the filing by Yale of a petition for reorganization. The existence of a preference, therefore, depends on whether this transfer was made on account of an antecedent debt, and

whether Yale was insolvent at the time. In order to determine the latter issue, we recognize that a lengthy proceeding would be required. We therefore suggest, in the interest of judicial economy, that the district judge first determine whether equitable considerations require that Yale be allowed to retain possession of the trucks and trailers, either with or without use payments to Fruehauf. If this inquiry is answered affirmatively, Fruehauf's petition for reclamation should be denied. If, however, the district court finds that Fruehauf is entitled to reclaim the contested vehicles, then that court will be required to determine whether Fruehauf's security interest is voidable as a preference.

Reversed and remanded.

LUMBARD, Chief Judge (dissenting):

I dissent and vote to affirm Judge Tyler's order.

Section 116(4) of the Bankruptcy Act, 52 Stat. 885 (1938), 11 U.S.C. § 516(4), empowers the district court in a Chapter X reorganization to stay the enforcement of a "lien upon the property of the debtor," and it should do so if such enforcement would jeopardize the reorganization and if there is "some reasonable assurance that a suitable substitute will be offered" by the plan of reorganization. In re Murel Holding Corp., 75 F.2d 941, 943 (2 Cir. 1935); 2 Gerdes, Corporate Reorganizations 1451–52 (1936); see In re Prudence Co., Inc., 90 F.2d 587 (2 Cir. 1937). This Court in In re Lake's Laundry, Inc., 79 F.2d 326 (2 Cir.), cert. denied sub nom. Lake's Laundry, Inc. v. Braun, 296 U.S. 622, 56 S.Ct. 144 (1935), in effect equated the word "property" as used in section 116(4) with "title," and held that the district court had jurisdiction to stay enforcement of a lien only if the lienor did not retain title. Judge Tyler correctly held that, under pre-Uniform Commercial Code standards, Fruehauf did not retain title to the truck bodies and trailers, since it sold them outright to Yale and only later took back security

interests which were labeled "chattel mortgages." Cf. Canandaigua Nat'l Bank & Trust Co. v. Commercial Credit Corp., 285 App.Div. 7, 135 N.Y.S.2d 66 (4 Dep't 1954); 1 Gilmore, Security Interests in Personal Property § 3.3, at 68–69 (1965). Thus Judge Tyler clearly had the power to stay Fruehauf's security interests under the *Lake's Laundry* rule.

My brothers now reject the *Lake's Laundry* rule, and hold that Judge Tyler would have had this power even if Fruehauf had reserved title, which it did not. This holding seems unnecessary, and perhaps premature.[1] My brothers' belief that Judge Tyler might have done what he did in a quite different case hardly compels reversal of what he did. My brothers do not purport to change the standards governing the district court's exercise of its discretion, when it has discretion, to stay liens under section 116 (4). There is no indication in Judge Tyler's opinion that he misconceived those standards. It is true, as my brothers emphasize, that he did not expressly characterize the equity in favor of Fruehauf, and did not explicitly state that it was outweighed by Yale's. But Fruehauf's lone equity, the possibility that its secured position will be jeopardized, was clearly raised by the affidavits before Judge Tyler, and he just as clearly weighed it against Yale's need. There is thus no foundation for my brothers' apprehension that Judge Tyler's decision may have been "influenced, at least in part, by his erroneous finding that the trucks and trailers were the 'property'

of Yale." And Fruehauf has not attempted to show that in the specific circumstances of this reorganization Judge Tyler's order was an abuse of discretion, as it must to obtain reversal. E. g., Foust v. Munson S.S. Lines, 299 U.S. 77, 83, 57 S.Ct. 90, 81 L.Ed. 49 (1936). I would therefore uphold Judge Tyler's exercise of discretion, which, it seems to me, was the same under the *Lake's Laundry* rule as under the rule my brothers now adopt.

In particular, I do not believe that we need remand so that Judge Tyler may consider whether to award Fruehauf reasonable rental for the bodies and trailers. For one thing, there is no indication in the record on appeal that Judge Tyler was asked to award rental if he denied reclamation. On the merits, no case has been found awarding rental to a lienor whose lien has been stayed under Chapter X, and rental has been expressly denied in analogous circumstances. Cf. Barth Equipment Co., Inc. v. Perlstein, 128 F.2d 253 (2 Cir. 1942); In re Wisconsin Central Ry. Co., 64 F.Supp. 251, 258–259 (D.Minn.1946). Compare In the Matter of Newjer Contracting Co., Inc., 154 F.Supp. 567 (D.N.J.1957). As a practical matter, a corporation undergoing reorganization is generally no more able to pay rental than to discharge the lien. The record indicates that this is true here. Yale was to pay the purchase price of the bodies and trailers, without interest, over a five-year period. Their useful life is indicated by the fact that Yale depreciates them on its books at 12½% a year, so

---

1. The issue is broader than the permissible scope of stays under Chapter X, because all "property of the debtor" may be included in the plan of reorganization. 52 Stat. 896 (1938), 11 U.S.C. § 616(2). The holder of what would have been a security title before the Uniform Commercial Code has himself furnished (or financed) the goods he seeks to reclaim. See, e. g., N.Y. Personal Property Law, McKinney's Consol.Laws c. 41, §§ 52 (1) (repealed) (trust receipt), 61 (repealed) (conditional sale). And one who sells goods to a corporation already in precarious financial circumstances may jus-

tifiably seek a security interest that cannot be frozen by a Chapter X reorganization, which under my brothers' holding seems impossible to obtain. Such considerations, if squarely raised and adequately briefed, might lead to a less sweeping extension of the "property of the debtor" and repudiation of the *Lake's Laundry* rule than my brothers', although that rule has found no defenders among commentators. See, e. g., 2 Gilmore, Security Interests in Personal Property § 44.9.1 (1965); Developments in the Law, 49 Harv.L.Rev. 1111, 1134–35 (1936).

that they are fully depreciated in eight years. Thus a reasonable rental would apparently be approximately the same as the purchase price installments Yale has failed to pay. Moreover, if Fruehauf were entitled to rental, all of Yale's other secured creditors would seem to be entitled to some kind of payment. Thus Judge Tyler, having stayed Fruehauf's security interests, could not consistently award it rental, and I would not remand for a consideration of this issue.[2]

I would affirm Judge Tyler's decision, and leave for determination in the normal course of the Chapter X proceedings the question of Fruehauf's status as a secured creditor.

2. Whether Fruehauf might be entitled to damages for any actual decline in the value of its security is a wholly different issue, which should be resolved after the plan of reorganization has been formulated and the damages, if any, are known. Cf., e. g., In re New York, N. H. & H. R.R., 147 F.2d 40, 47–48 (2 Cir.), cert. denied sub nom. Commonwealth of Massachusetts v. New York, N. H. & H. R.R., 325 U.S. 884, 65 S.Ct. 1577, 89 L.Ed. 1999 (1945); Barth Equipment Co.. Inc. v. Perlstein, 128 F.2d 253 (2 Cir. 1942).