**In the Matter of YALE EXPRESS SYSTEM, INC.**

**Application of UNITED STATES TRUST COMPANY OF NEW YORK.**

**No. 65 B. 404.**

United States District Court
S. D. New York.
Feb. 23, 1968.

Royall, Koegel, Rogers & Wells, New York City, for trustee, by David W. Bernstein, New York City, of counsel.

John M. Friedman, New York City, for The Bank of New York.

Cadwalader, Wickersham & Taft, New York City, pro se and for United States Trust Co. of New York, by William N. Clarke and Terence F. Gilheany, New York City, of counsel.

Marvin Jacob, New York City, for Securities and Exchange Commission.

### MEMORANDUM

TYLER, District Judge.

F. Ralph Nogg, trustee in reorganization of the debtors, has applied to this court for authority to reimburse United States Trust Company of New York ("trust company") as trustee under a certain collateral trust indenture ("the Trust Agreement") for stated administrative expenses and counsel fees. After a final hearing in court on November 22, 1967, some of the interested parties have also submitted in writing statements of their positions in respect to this application.

On April 21, 1965, just prior to the filing of the original petition for reorganization in this court, debtor Yale Express System, Inc. ("Yale Express") entered into the Trust Agreement with the trust company as trustee for First National City Bank and certain other major institutional creditors of the debtors. Under the Trust Agreement, Yale Express deposited substantial assets for the purpose of securing loans by First National City Bank and other creditors. Among other things, the Trust Agreement paved the way for a new loan to Yale Express in the amount of $2,625,000.00.

Of some relevance to the present application are the provisions of Section 15 of the Trust Agreement to the following effect:

"The Company [Yale Express], from time to time upon request, will pay the Trustee [the trust company] reasonable compensation for its services hereunder and under the Security Instruments and will pay or reimburse the Trustee for all its costs, expenses and charges hereunder and under the Security Instruments (including, without limitation, expenses of taking, sale or other proceedings, the reasonable compensation and expenses of the Trustee hereunder and under the Security Instruments, reasonable attorneys' fees and expenses, court costs and other expenses incurred and expenditures or advances made by the Trustee or any holder of any of the Senior Indebtedness in the protection, exercise or enforcement of any right, power or remedy and the compensation and expenses of agents of the Trustee not regularly in its employ), and for all such costs, expenses and charges and for the indemnity provided in Sections

12(d) and 12(i) the Trustee shall have a prior claim against any moneys coming into its hands hereunder and may apply such moneys to the payments, reimbursement or satisfaction of such costs, expenses and charges and indemnity prior to any other application of such moneys."

From the effective date of the Trust Agreement and continuing after the petitions for reorganization were filed and up to the present date, the trust company has continued to receive, retain and invest assets and cash of the debtors. In the course of performing its duties in the implementation of the Trust Agreement, there can be no serious question but that the trust company has faithfully administered and applied the collateral trust to the benefit of the creditors and debtors in reorganization, with concomitant usefulness to these reorganization proceedings.

In connection with the drafting and execution of the Trust Agreement and the performance by the trust company of its obligations thereunder, Messrs. Cadwalader, Wickersham and Taft ("Cadwalader"), a law firm in New York City, has represented the trust company. On or about June 7, 1965, Cadwalader rendered its first statement to the trust company requesting a fee of $20,000.00 for services rendered to that date. Thereafter, Cadwalader rendered two other bills for services rendered for the period from June 8, 1965 through July 21, 1967. The total legal fees billed by Cadwalader to the trust company amount to $23,250.-00, plus disbursements in the sum of $133.47.

Furthermore, the trust company has submitted to the trustee in reorganization its various bills covering a period of about two years and three months from April 21, 1965 through July 15, 1967 in the total amount of $15,003.88. It is these bills and statements of the trust company and its counsel for which the trustee in reorganization here seeks authority to pay.

On September 11, 1967, prior to the final hearing on this application, counsel for the reorganization trustee and counsel for the First National City Bank entered into a stipulation regarding this particular application. That stipulation, which has been filed in court, provides as follows in significant part:

"IT IS HEREBY STIPULATED by and between the undersigned, attorneys for the parties named below, that (1) the payment by the Trustee of fees and expenses to United States Trust shall not prejudice the right of the Trustee, if the Trust Agreement is declared to be voidable and is voided, to assert that he is entitled to be reimbursed by the beneficiaries under the Trust Agreement for such payments, and (2) the right of the Trustee to assert that he is entitled to be reimbursed by the beneficiaries under the Trust Agreement for such payments shall be without prejudice to the right of the beneficiaries to assert that they are not required to reimburse the Trustee for such payments."

During the summer and fall of 1967, representatives of the Securities and Exchange Commission ("SEC") checked and discussed with representatives of the trust company and its counsel all items and matters for which reimbursement is sought.

Before specifically considering the bills submitted by the trust company and Cadwalader to the reorganization trustee, it should be noted that at the final hearing no creditor or other interested party opposed payment of any kind to the trust company and its counsel except The Bank of New York, as trustee for the subordinated Yale Express debenture holders. The SEC noted an exception to certain specific items, which exceptions will be discussed hereinafter. Similarly, counsel for the reorganization trustee noted his exception to at least one specific item also to be discussed below.

The bases of opposition of The Bank of New York can be briefly summarized. First, it is urged by counsel for The Bank of New York that, particularly inasmuch as the trust company is protect-

ed by its lien acquired on April 21, 1965, there is no compelling reason for payment now of the fees and expenses of the trust company and its counsel. Second, it is urged that this reorganization court presently cannot measure the precise benefits to the reorganization of Yale Express and its affiliated debtors from the implementation of the Trust Agreement by the trust company. Finally, although it does not appear that counsel presses this point too vigorously, it is suggested that the trust company should turn over the cash which it is now holding in the trust to the reorganization trustee for the benefit of all creditors in these proceedings.

■ I am constrained to reject the arguments of The Bank of New York. As it concedes, it holds no security for its claim to fees and reimbursement for its attorneys' fees. The trust company, however, under the terms of Section 15 of the Trust Agreement is in effect a secured creditor seeking here to be paid out of its security. A secured creditor of a firm in reorganization, it is true, may not appropriate or collect upon its security in circumstances where to do so would be to harm the debtor. See, e. g., In re Yale Express System, Inc. (Fruehauf Corp. v. Yale Express System, Inc.), 370 F.2d 433 (2d Cir. 1966), and 384 F.2d 990 (2d Cir. 1967). But this court has previously approved retention by the trust company of the collateral which it holds under the Trust Agreement. That collateral is not available to Yale Express and the other debtors. Thus, it will make relatively little difference to the affairs of the debtors whether the trust company's fees and expenses are paid now or later.

Presently, the trust company is holding property of Yale Express worth approximately $500,000.00. Of this, $400,000.00 is represented by a certificate of indebtedness by the trustee in reorganization; the balance is represented by about $100,000.00 in cash and liquid securities. From time to time during reorganization, the Trust Agreement as

implemented by the trust company has assisted in the orderly rehabilitation of Yale Express and the other debtors. To illustrate by means of one example, the trust company has received and invested cash proceeds from sales of obsolescent trucks and equipment by the trustee in reorganization. The trust company has also looked after the interests herein of First National City Bank and other creditors. In sum, it can be fairly concluded that (1) the Trust Agreement contains collateral which is adequate to cover payment of reasonable fees and expenses to the trust company; (2) the trust company has faithfully and efficiently administered the collateral trust; and (3) the efforts of the trust company and its counsel have contributed to the orderly progression of the reorganization proceedings.

Moreover, the aforementioned stipulation by counsel for First National City Bank and counsel for the trustee makes it clear that any payments to the trust company are without prejudice to the trustee's right to assert and establish that the security interests conferred by the Trust Agreement are voidable. The stipulation also provides that in the event of a later determination of the court that such security interests be voided, the trust beneficiaries will be obliged to reimburse the debtors for payments to the trust company and its counsel.

■ Finally, although I do not understand counsel for The Bank of New York to be arguing otherwise, there is pertinent authority in this circuit for payment in a reorganization proceeding of fees and expenses of the trustee of a collateral trust, Ruskin v. Griffiths, 269 F.2d 827 (2d Cir. 1959), particularly where, as here, there has been an express determination, *inter alia*, that the fees and expenses are called for by a contract and that the services rendered by the trust company and its counsel were reasonably necessary for administration and protection of the trust. Id. at 834. Thus, I reject the contentions of The Bank of New York and turn to an evaluation of

the applications of the trust company and its counsel. This evaluation, of course, will reflect consideration of the specific objections of the trustee in reorganization and the SEC.

*Application of The Trust Company*

For purposes of orderly discussion, these exceptions will be taken up in a step by step discussion of each aspect of the trust company's claims for compensation.

1. The trust company seeks the sum of $4,100.00 to compensate it for what will be generally styled the normal expenses of administering a trust of this kind. No one opposes this particular claim, which seems fair, normal and reasonable under all of the circumstances. It is granted.

2. The trust company also seeks the sum of $1,250.00 representing fees for its services in keeping custody of collateral supporting the trust. Again, no one opposes this branch of the application, which seems fair and reasonable. Thus, it is granted.

3. A claim is also made for fees in connection with investment and redemption of cash deposited by Yale Express. These fees of $210.00 are not only minimal but also fair and reasonable for what transpired. This claim is granted.

4. Similarly, the trust company seeks fees in connection with its execution of titles to various vehicles which were transferred for the benefit of Yale Express. These fees of $76.00 are fair and reasonable and thus are granted.

5. Closely allied to the claim immediately hereinabove is a claim for $182.50 representing expenses of the trust company in connection with its release from the trust of various vehicles sold by the reorganization trustee for cash. This claim is fair and reasonable and should be paid.

■ 6. The trust company also seeks the sum of $3,798.50 alleged to consist of consulting time expended by its chairman and former executive vice president, Mr. Sinclair Armstrong. This sum is for 26¾ hours of time for Mr. Armstrong at an hourly rate of $142.00. Without reaching the question of the propriety of the hourly time charge, I reject this claim in its entirety because there do not seem to be any sufficient supporting reasons therefor. More particularly, I cannot determine from the affidavits that the time of Mr. Armstrong related directly to implementation and protection of the collateral trust. The trustee in reorganization and the SEC oppose this particular claim of the trust company. I agree with their arguments and reject this claim in its entirety.

■ 7. Finally, the trust company seeks to be reimbursed for what it styles extraordinary administrative time and efforts by Assistant Vice President Elmer Witting and Corporate Trust Administrator Charles J. Paine. It is alleged without contradiction that together these two bank officers expended 55½ hours extra administrative time in connection with trust affairs. The trust company seeks compensation for this extra time at an hourly rate of $97.50 for a total of $5,386.88. Both the SEC and the trustee in reorganization oppose this item upon the ground that the hourly rate for the two bank officers in question is excessive under all the circumstances. I agree and therefore reduce the amount here to the total sum of $2,775.00. In other words, I have reduced the hourly rate for Witting and Paine to the sum of $50.00, which, in my view, is eminently fair and appropriate.

To recapitulate, of the total billings of the trust company amounting to $15,003.88, I authorize the trustee in reorganization to pay the total sum of $8,593.50 for the specific claims of the trust company hereinabove enumerated and discussed.

*Application of Cadwalader, Wickersham & Taft for legal Fees and Disbursements.*

It has been mentioned that Cadwalader has billed the trust company for a total of $23,250.00 for fees and an additional

$133.47 for disbursements covering the period from February 24, 1965 through July 21, 1967. In the affidavits of Cadwalader, it is stated without contradiction that partners and associates expended a total of 398 hours for matters in connection with the execution and implementation of the Trust Agreement. Of this total, 139 hours were expended by partners of the firm; 259 hours were expended by associates. In other words, as it frankly concedes, Cadwalader has charged an hourly composite rate of $58.-42 for its legal services in this connection.

In support of this application, Cadwalader basically argues that this court should not apply "reorganization standards" to an award of counsel fees in this connection. By this, I understood and still understand Cadwalader to urge that this court should reason that under the Trust Agreement, it was implicit that the trust company's counsel be compensated at normal hourly rates charged by reputable institutional law firms in New York City. The SEC, pointing to Ruskin v. Griffiths, supra and similar authorities, urges that reorganization standards of allowances should in significant part be followed. Here, I conceive the SEC to be maintaining that this court must be aware of the Trust Agreement provisions and, as well, of the circumstance that in a very real sense the fees of Cadwalader are to be paid from assets of the debtors in reorganization. The Bank of New York, as noted, takes the position that the counsel fees should not be paid to Cadwalader at this time—i. e. that Cadwalader should await the completion of the reorganization proceedings before seeking an allowance for its fees and disbursements.

I agree with the SEC that "reorganization standards" as heretofore defined should be applied. Ruskin v. Griffiths, supra at 834. Parenthetically, it should be noted that Cadwalader has strenuously urged upon me that an earlier decision of this reorganization court is authority for payment of counsel fees at normal commercial rates without consideration of the interests of the debtors and creditors in these reorganization proceedings. See In re Yale Express System (Application of Chase Manhattan Bank and Milbank, Tweed, Hope & Hadley), 65 B. 404, unreported opinion filed on December 30, 1966. Although it may be that certain language in that opinion could be construed to support Cadwalader's argument, I am constrained to conclude that the question presented in that case was materially different than the one presented here. A major lynchpin in the December 30, 1966 decision was the fact that the previous trustee in reorganization, in order to induce the Chase Manhattan Bank to purchase a major quantity of trustee certificates in these proceedings, made an agreement with that bank to pay its counsel fees incident to the purchase transaction from assets of the debtors. Moreover, the legal fees paid to counsel for the Chase Manhattan Bank were nominal in comparison to the substantial benefits conferred upon the debtors in the form of cash at a time when it was desperately needed.

The SEC specifically suggests that a total fee for Cadwalader should be allowed by this court to the extent of $17,-500.00, plus disbursements as prayed for. As a matter of simple mathematics, this suggested fee works out at a composite hourly rate of $44.00.

No party has suggested that the hours expended by Cadwalader lawyers are inflated or unnecessary. Consequently, upon balancing the value of the legal services rendered by counsel under the terms of the Trust Agreement against consideration of the affairs of the debtors in these proceedings, I award Cadwalader fees in the total amount of $19,900.00, plus their out-of-pocket disbursements in the amount of $133.47.

Counsel for the trustee in reorganization is directed to submit an order in accordance with the foregoing memorandum.