OPINION OF THE COURT
Joseph J asp an, J.
The defendant the Service Institute, Inc., is charged in an indictment with seven counts of criminal usury in the first degree arising out of a series of alleged loans to the Giove Funeral Home, Inc., at a rate of interest in excess of 25% per annum or the equivalent rate for a shorter period as part of a scheme or business of making and collecting usurious loans.
The funeral home, in order to alleviate its cash flow needs, "assigned” to the defendant some of its accounts receivable for which it was paid or credited with an amount equal to 92% of their face value subject to further payments of "service *550 charges” if Service Institute was not paid within 60 days. If these were loan transactions, the interest would exceed the 25% per annum statutory minimum (Penal Law, § 190.42).
The defendant now moves to dismiss the indictment on the ground that the money it paid to the funeral home represented the price for a purchase by it of the receivables — as distinguished from a loan — and was therefore not a transaction subject to the usury laws (Johnstown Bank v American Sur. Co. of N. Y., 6 AD2d 4; Spain v Talcott, 165 App Div 815).
The issue is whether the agreement between the parties which provided, inter alia, for a nonnotification assignment with recourse was a collateralized loan or a sale of the accounts receivable.
This court is not bound by the form of the transaction, but may look to its substance to determine the true intent of the parties.
The true intent of the contracting parties is a question of fact which requires an examination of the entire contract. (Canandaigua Nat. Bank & Trust Co. v Commerical Credit Corp., 285 App Div 7; Matter of Merkel, Inc., 25 AD2d 764, 46 Misc 2d 270; Universal C. I. T. Credit Corp. v Schlossman’s, Inc., 42 Misc 2d 613; Matter of Kanner Hat Co., 482 F2d 937.) The mere fact that a transaction may have been denominated a sale rather than a loan is not determinative (Cusick v Ifshin, 70 Misc 2d 564, affd 73 Misc 2d 127; Bostwick-Westbury Corp. v Commercial Trading Co., 94 Misc 2d 401).
The principals of the corporate defendant were engaged in a self-described factoring business serving the funeral parlor trade. The funeral director necessarily undertook to provide immediate services knowing that payment therefore is frequently delayed by requirements of third-party sources or by delay in the administration of an estate. The defendant offered to "purchase” the receivables at a discount commensurate with the risk involved (usually 8%) subject to a provision for the "repurchase” by the assignor within 60 days, or failing that to pay an additional 6% "service charge” for each 60 days the account remained unpaid beyond the stipulated term.
The agreement between the parties designates an attorney, the secretary of defendant corporation as "assignor’s true and lawful attorney in fact with full power to collect the account receivable (t)herein assigned” and further agrees that if the services of an attorney are needed to enforce collection, the assignor would pay the fees and disbursements involved.
*551 Where the moneys are due from a carrier, the assignee would deal directly with them and require payment.
In other cases, however, the director did not wish the family to know that the account has been "sold” and the transaction was entered into on a nonnotification basis with permission to the funeral director to collect and remit.
In all cases the assignor guaranteed payment of all sums due on the "assignor paper” plus the fees and charges referred to above.
In the official comment to section 9-101 of the Uniform Commercial Code relating to secured transactions, it is noted that there are "a wide variety of security devices, which came into use at various times to make possible different types of secured financing” and that the purpose of the article is to provide a "simple and unified structure within which [they] * * * can go forward with less cost and with greater certainty.” For the purpose of this article distinctions "based largely on form, are not retained.”
This note added that the location of title (Uniform Commercial Code, § 9-202) may be of no significance with respect to the perfection of the security interest but "may become important for other purposes.” (Uniform Commercial Code, § 9-101, official comment.)
Accordingly, article 9 relating to perfection of the rights of parties in secured transactions is specifically made applicable by section 9-102 (subd [1], par [a]) "to any transaction (regardless of its form) which is intended to create a security interest in * * * chattel paper [or] accounts” and in section 9-102 (subd [1], par [b]) "to any sale of accounts * * * or chattel papers.”
However, this does not resolve any doubt as to whether a given transaction is a sale-with-recourse or a loan and pledge (Kripke, Practice Commentaries, McKinney’s Cons Laws of NY, Book 62 Vi, Uniform Commercial Code, § 9-102, pp 323-325).
The entire document and the course of conduct of the parties must be examined to determine their intent.
The existence of a recourse provision in the contract is a circumstance that may be considered in arriving at the true intent of the parties (Matter of Grand Union Co., 219 F 353, cert den 238 US 626, app dsmd 238 US 647; see Maloney v John Hancock Mut. Life Ins. Co., 271 F2d 609), but does not *552 by itself convert the purported sale into a loan. It may, however, be indicative thereof (see Ann. 95 ALR 1197, Sale or Pledge of Choses in Action).
A significant feature of the agreement under review is the nonnotification provision which applies to each of the transactions covered by the indictment.
An unconditional transfer of title may not become effective where the assignor retains the authority to collect the receivable (Miller v Wells Fargo Bank Int. Corp., 540 F2d 548, citing Farmers’ Loan & Trust Co. v Winthrop, 207 App Div 356, mod 238 NY 477, cert den 266 US 633; Griffey v New York Cent. Ins. Co., 100 NY 417; Coastal Commercial Corp. v Kosoff & Sons, 10 AD2d 372).
In the instant case, the language of the agreement gave the assignee the right to collect the sums due, but in actual fact that right was reserved to the assignor pursuant to the nonnotification policy and understanding. Nor was there any express provision that the funds so received would be held in trust or in escrow for the benefit of the assignee or any indication that such a practice was followed.
Applying the applicable law to the facts at bar, the court concludes that the contract between the Service Institute and the funeral home may be found to evidence a loan secured by the accounts receivable. The combination of circumstances in this case, to wit, the right of full recourse by the assignor and its attendant failure to assume risk; the charging of interest plus a service charge. The nonnotification of the account debtor as to the assignment, the assignee’s right to withhold payments on the accounts until the 60 days had expired and his right to commingle the moneys collected with his own and the assignor’s offer to help the assignor collect the accounts inevitably point to a loan transaction.
In Krauss v Clarke (173 NYS 101), the plaintiff sued to recover twice the interest paid to the defendant bank on the grounds that the rate charged was usurious. The plaintiff had ostensibly sold an accounts receivable to an agent of the bank and in return received an amount equal to 60% of its face value. In addition, the plaintiff guaranteed payment on the receivable. The court held that in these circumstances, the transaction must be viewed as a loan and not as the sale and purchase of an accounts receivable.
In Matter of National Discount Cos. (272 F 570, cert den 257 US 635) a discount company agreed to advance to a corpora *553 tion 80% of the face value of its accounts receivable with an additional 1% per month service charge on the face value until paid. The corporation agreed to repurchase all receivables not paid at maturity. The court held that this was not the purchase of accounts receivable, but was, in fact, a conduit for making loans secured by assignment of the receivables.
The fact that the assignor funeral home may have been a corporation is not a defense to a claim of usury (General Obligations Law, § 5-521, subd 3).
In fact, section 9-201 of the Uniform Commercial Code provides that "[n]othing in this Article validates any charge or practice illegal under any statute or regulation thereunder governing usury”.
The Grand Jury was given the opportunity to determine from the facts submitted to it whether the transaction was a loan with a contrary finding necessarily precluding an indictment.
The ultimate finding of a true bill from which it may be inferred that the jury concluded that despite the form of the transaction it was, in fact, a loan with interest charged in excess of the permissible limit is amply supported by the evidence. The Grand Jury minutes are found to be legally sufficient to support the indictment.
The charge given to the Grand Jury when viewed as a whole placed the issue of sale vis-á-vis loans before them and was such as to give them an adequate statement of the applicable law so that they had the opportunity to determine whether based on the law and the facts presented to them the defendant may be indicted for each of the crimes charged. (See United States v Park, 421 US 658.)
However, since the defendant may have been acting upon advice of counsel and without criminal intent, this court would entertain a motion pursuant to CPL 210.40 to dismiss in the interests of justice and defendant may so move, upon proper papers, if it be so advised.
[Portions of opinion omitted for purposes of publication.]