## In re CHARLES VILLA COMPANY, INC., Debtor.

## CHARLES VILLA COMPANY, INC., Plaintiff,

### v.

## Henry J. VAGTS, June S. Vagts, Charles V. Villa, Jr., Pacemaker Plastics Company, Inc., Defendants.

### Bankruptcy No. 80–0732–G.
### Adv. No. 4–80–0215–G.

United States Bankruptcy Court, D. Massachusetts.

March 6, 1981.

James F. Queenan, Jr., Worcester, Mass., for plaintiff/debtor.

Steven Kressler, Worcester, Mass., for defendants.

## MEMORANDUM AND ORDER ON COMPLAINT TO RECOVER POSSESSION OF MOLD

PAUL W. GLENNON, Bankruptcy Judge.

The Charles Villa Company, Inc. (the "Debtor") is in the business of manufacturing and selling trophies, cups and accessories for trophies. It filed its petition for reorganization under Chapter 11 of the United States Bankruptcy Code (11 U.S.C. §§ 1101, et seq.) on November 10, 1980 and is currently operating as a debtor-in-possession pursuant thereto.

The matter before the Court involves a 10 cavity Eagle mold, which the debtor uses to

produce plastic eagles for mounting on trophies and cups. The debtor has represented that it has back-orders for delivery of these eagles to other companies, but has been unable to perform because it does not have possession of the mold by which the eagles are produced. By security agreement dated October 24, 1979, the debtor granted to Henry J. and June S. Vagts (the "Vagts") a security interest in the mold as security for the payment of a promissory note dated October 24, 1979 in the sum of $7,000 payable in 180 days, with interest of $250 per month during the 180-day period. The debtor is in default under the note and as a result, the Vagts, on or about October 31, 1980, stated their intention to take possession of the mold from the defendant Pacemaker Plastics Company, Inc. ("Pacemaker"), which had been manufacturing products for the debtor with the use of such mold.

The debtor does not know now· which of the defendants has possession of the mold, but avers that one of the defendants has control over it or knows of its whereabouts. Further, the debtor claims that this mold is a valuable asset and essential to its reorganization plans. The defendants have argued that this mold is not subject to the Court's control since it is not "property of the debtor" or of the estate.

The operative provision of the Bankruptcy Code is § 542(a) which provides, inter alia that an entity, in possession during the case, of property that the trustee (or debtor-in-possession in this instance) may use, sell, or lease under § 363 shall deliver to the trustee (debtor), and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate. Section 363(b) of the Bankruptcy Code permits the trustee (debtor) to use, sell, or lease "property of the estate". The question before this Court is whether the mold is "property of the estate". The defendants argue that where a debtor has voluntarily created a security interest in the mold in favor of a creditor, title to the mold passed to the creditor. *In re Spanish Language Television of Arizona, Inc.,* 456 F.2d 159 (9th Cir. 1972). Further,

they assert that the claim of title is strengthened by the fact that the defendants Vagts repossessed the mold prior to the filing of the debtor's Chapter 11 petition. The second issue before the court is whether, if the mold is found to be property of the estate, the property is of inconsequential value or benefit to the estate. The second issue can only be addressed if the answer to the first question is in the affirmative.

At first glance, the Court was of the opinion that Massachusetts law should be consulted to determine where title to property lies in a secured transaction such as the one before it. However, a review of the case law reveals that *In re Yale Express System, Inc.,* 370 F.2d 433 (2d Cir. 1967), is controlling. In that case, the circuit court stated that in recognition of the revolution in commercial law occasioned by the Uniform Commercial Code (the "UCC"), it would be incongruous for the federal courts to continue to employ anachronistic distinctions to determine whether a creditor is entitled to redeem property held by the trustee when the overwhelming number of states have succeeded in bringing their laws more into line with commercial reality. *Yale Express,* supra at 437. Therefore the Court held that a creditor's right to reclaim its collateral cannot hang on whether its security agreement is labeled a "conditional sales contract" or a "chattel mortgage".

Since the Uniform Commercial Code has abolished technical distinctions between the various security devices, the federal bankruptcy courts should no longer feel compelled to engage in the purely theoretical exercise of locating "title"; nor should considerations of where "title lies" influence the courts in the exercise of their equitable discretion .... Equitable considerations and the *substance* of the transaction should govern, regardless of the *form* of the security agreement. *In re Yale Express System, Inc.,* supra at pp. 437–38.

■ Thus, the *Yale* doctrine provides for a new federal standard by which "property

of the estate" is to be determined in cases where the property involved is subject to some form of security interest. It does not matter that in *Yale* it was the secured creditor who was seeking possession, whereas, here the debtor is the complaining party. The standard of *Yale* appears to cut across both areas and can be applied with equal effectiveness to each situation. The reasoning of the Second Circuit is well-founded since Article 9 of the UCC, Section 9–202, provides, "Each provision of this Article with regard to rights, obligations and remedies applies whether title to collateral is in the secured party or in the debtor". This section has been adopted in Massachusetts pursuant to Massachusetts General Laws, Chapter 106, Section 9–202. The basic policy of Article 9 is to eliminate technical distinctions between forms of security devices such as chattel mortgages, conditional sales, trust receipts, and the like, and to substitute a set of rules for all security transactions. The Article contemplates neither a "title" theory nor a "lien theory" of security interests, but rather, leaves it to other state law to determine the location of title. The rule in *Yale* expresses the opinion that it seems unrealistic to allow the inconsistencies of different state laws to determine whether title is in the debtor or the creditor, where the UCC and the Bankruptcy laws both seek to provide a uniform set of rules by which all parties shall be bound. While there is no case on point in this circuit which directly follows the standard of *Yale*, no case has been cited which is in contradiction of it. I would therefore adopt it as the standard to be followed in the case before me now.

Further, the defendants have cited *In re Spanish Language Television of Arizona, Inc.*, 456 F.2d 159 (9th Cir. 1972) for the premise that title passed to the secured creditor upon creation of the security interest. That case is not applicable to the case at bar. First, that case involved a conditional sales contract entered into at a time when the UCC was not law in the state of Arizona. Its holding was based upon the Second Circuit's decision in *In re Lake's Laundry, Inc.*, 79 F.2d 326 (2d Cir.), cert. den., sub nom. *Lake's Laundry v. Braun*, 296 U.S. 622 (1935). The rule in *Lake's* was discarded by the Second Circuit by its decision in *Yale*. Moreover, the Ninth Circuit distinguished its case from *Yale* by saying that the case before it involved a secured interest which arose from an agreement other than one under the UCC. In a footnote at page 161, the Ninth Circuit points out, "[P]roperty sold under agreements covered by the Code are subject to the jurisdiction of District Courts in bankruptcy actions," and then cited to *Yale*. Therefore, the defendants' reliance on *Spanish Television* is misplaced under the facts of this case.

Finally, in *Matter of Dann*, 2 B.R. 107 (Bkrtcy., D.Fla.1979), a bankruptcy court, citing *Yale*, went so far as to say that a secured creditor's act of having a new title certificate issued in its name was not enough to change the nature of the relationship from one of credit buyer and financier so as to take the transaction out of Article 9 of the UCC. Thus, I feel that since the transaction involved in the case at bar is clearly an Article 9 secured transaction, the rule of *Yale* will apply.

■ Applying now the principles enunciated in *Yale* to the facts of this case, the stenographic record of the hearing on this complaint reveals the debtor's admission that it is in default upon the promissory note and that the subject-mold was repossessed sometime prior to the filing of its Chapter 11. The debtor claims that this property is a valuable asset which can be used to generate income for the estate. The defendants did not introduce any evidence as to the value of the mold or as to the debtor's lack of equity in the mold. The defendants' own witness testified that for fiscal 1980, the eagle mold sales represented 4 percent of the total sales for the year, and that the profit margin on each eagle sold was approximately 15 percent. Further, the debtor testified that its profit margin will be even greater in the future because it has raised its sale price without any attendant use in the cost of production. Therefore, upon all the equities of the case, I am

of the opinion that this property is a valuable asset of this debtor and should be returned to its possession. No evidence exists to suggest that the secured creditor's position will be impaired or diminished by the return of the mold to the debtor. If such evidence were to be produced, it is likely that some form of adequate protection could be given by the debtor so as to allow for the continued use of the mold.

Finally, since the Court has determined that this property properly belongs to the estate of the debtor, it must also be noted that based on the testimony noted above, I am of the opinion that § 542(a) is satisfied in that this property is not of inconsequential value or benefit to the estate, and should be turned over to the debtor. An order shall enter accordingly, and a hearing shall be held at Worcester, *April 1, 1981* at *11:00 A.M.*, to determine the question of the defendants' right to adequate protection, if any, and the amount thereof. SO ORDERED.