In the Matter of NEWJER CONTRACT-ING COMPANY, Inc., Bankrupt.

No. B 632-56.

United States District Court
D. New Jersey.

June 28, 1957.

Katzenbach, Gildea & Rudner, by George H. Barlow, Trenton, N. J., for petitioner. Kavinoky, Cook, Hepp & Sandler, by Edward H. Kavinoky, Buffalo, N. Y., of counsel.

Bergman & Rothbard, Newark, N. J., for Richard Norris, Trustee, respondent.

FORMAN, Chief Judge.

This is a petition by the Manufacturers and Traders Trust Company of Ken-

more, New York (hereinafter called the Bank), to review an order of a Referee in Bankruptcy, dated March 29, 1957, and amended April 1, 1957, denying its petition for compensation for the use of its machinery by the Trustee for the Bankrupt, Newjer Contracting Company (hereinafter called Newjer).

The background of the present action is as follows: On September 1, 1955, Newjer, a road building construction company, acquired two Euclid road scrapers from the T. E. Potts Equipment Company of Kenmore, New York, under an agreement entitled "Contract of Lease". It was provided therein that Newjer

> "has leased the machinery at a total valuation of $105,600.00 payable as follows: $3520 cash in hand, * * * and $3520 per month for the term of 29 months."

The minimum lease period was stipulated to be 12 months and it was

> "understood that the Lessee (Newjer) may purchase the above equipment any time within the lease period by paying the difference between the total valuation and the amount paid in as rental."

There were other terms and conditions, among which was a clause reserving title in the lessor and providing that in the event of default or bankruptcy that the entire amount of rental payments shall become due and that the lessor should have the right of possession of the equipment for resale under the provisions of the New York State Uniform Conditional Sales Act. Personal Property Law, McK. Consol.Laws, c. 41, § 60 et seq.

The contract was assigned to the First National Bank of Buffalo, which subsequently was merged with the petitioning Bank. On September 22, 1955, copies of the contract were filed by petitioner as a conditional sales contract both in its home county of Genesee, New York, and Newjer's home county of Middlesex, New Jersey.

As of November 1, 1956, when Newjer filed a petition under Chapter X of the Bankruptcy Act, 11 U.S.C. § 501 et seq., Newjer had paid the sum total of $30,-140, leaving still owing $75,460. The equipment was subsequently, on January 7, 1957, appraised as having a value of $52,000.

At the time of the initiating of the Chapter X proceedings, Newjer had been engaged in a road building project on a section of the New York Thruway, with a considerable amount of work remaining to be done. On November 1, 1956, a receiver was appointed under Chapter X, who was later made Trustee in Bankruptcy (hereinafter called the Trustee). He submitted his affidavit of qualification as receiver to the clerk of the court on November 5, 1956. That same day, November 5, 1956, following a telephone conversation between the Trustee and the Bank's attorney, initiated by the latter in which inquiries were made concerning the Trustee's intentions concerning the road scrapers, the Trustee sent him the following letter:

> "Following our telephone conversation I contacted Mr. Freytag [President of Newjer] regarding the continued use of the two Euclid-Carry-all scrapers provided by the T. E. Potts Equipment Co.
>
> "The scrapers are definitely needed for the continued work on the New York Thru-Way job and accordingly, I request that the present leasehold or time-payment arrangement be continued so that the Newjer Contracting Co., Inc. may have the use of this equipment."

Pursuant to the above, the equipment was left with Newjer, which continued to use the two road scrapers up to or about November 21, 1956, when work on the project was stopped because of a snow storm. On December 4, 1956, the Bank petitioned for reclamation of the two road scrapers. On January 2, 1957, Newjer was adjudicated a bankrupt, and on January 9, 1957, reclamation was approved, but decision on compensation for the use of the machinery was deferred. On March 29, 1957, the petition for com-

pensation for use of the machinery was denied, and the petition for review of the Referee's order, and the hearing on the petition, followed in due course.

The Referee bases his decision on In re Daterson Publishing Co., 3 Cir., 1911, 188 F. 64, and Barth Equipment Co. v. Perlstein, 2 Cir., 1942, 128 F.2d 253. Daterson involved conditional sales agreements covering printing equipment, with monthly payments called rentals. The Court of Appeals denied a rental allowance for the seven month period between the petition for bankruptcy and the actual reclamation, on the theory that this seven month period was necessary in order to determine title in the machines.

Barth involved restaurant equipment on conditional sales contracts, used at the World's Fair. There, a petition for bankruptcy was filed on August 1, 1940. A petition for reclamation was filed on August 15, 1940, and the matter was adjourned until August 22, 1940, at which time decision was reserved. The Fair closed on October 27, 1940, after which the debtor was adjudicated a bankrupt, and Barth reclaimed his equipment on November 22, 1940. After a sale at public auction, there was a deficiency of approximately $1,000, in addition to which the conditional vendors claimed a rental fee from August 1 to October 27. The court held that reclamation is subject to reasonable delay. Further, where the delay was excessive, the vendor does not automatically become a landlord entitled to rent, but must prove damage by either showing that he could have resold the items at an earlier date on better terms than when he did, or that the unreasonable delay resulted in a loss of a rental market in the interim.

There can be no quarrel with the legal conclusions in Daterson and Barth, and the Referee's citation of them as prevailing law is correct. The sole question, therefore is whether the facts in the instant case warrant the conclusion reached. In the Daterson case, supra, the court suggested in its opinion that if the machines had been used, compensation would have been in order. It must be noted, too, that the trustee in Daterson made no request to the conditional vendors for retention of the equipment. In Barth, there was also no agreement between the parties respecting the use of retention of the equipment after the filing of the petition of bankruptcy. The court there inferred that had there been a rental agreement, its decision might have been different, for it said:

"There was never any agreement between the parties to pay such rental, and the claim is based solely on the delay in returning the equipment." 128 F.2d at page 254.

It is also pertinent to observe that no proof of damages was offered in Barth.

In the case at bar, a witness for the Bank testified at a hearing before the Referee that an available, even anxious rental market existed in the Buffalo yards of the New York Central Railroad, where a major operation requiring road scraper equipment was reported to be in progress. It was further testified that an available rental market existed a few hundred miles south of the Buffalo area as well. An affidavit was submitted estimating the fair rental value of the machines at a price far in excess of the terms under which the equipment was retained. None of this testimony or proof has been challenged by the Trustee. It is apparent that in two vital factual areas, the present case is distinguished from both Daterson and Barth, namely, in a request by the Trustee to retain the equipment under the conditions of the original "leasehold or time payment arrangement" and by evidence that the Bank could have realized income from the equipment if it had been returned.

The brief submitted on behalf of the Trustee emphasizes the fact that when he requested the continued use of the two road scrapers on November 5, 1956, he had been under the impression that it was a lease (rental) arrangement, rather than a conditional sales agreement. If anything, this should strengthen petitioner's claim for a rental allowance, on the theory that a rental arrange-

ment is what the Trustee bargained for.[1]

As stated in Remington on Bankruptcy, Vol. 11, § 4365:

"A conditional seller is entitled to reclaim even if removal of the equipment subject to the contract would cause the suspension of the operations of the debtor."

A conditional vendor, having title to the property, has the right to take possession of it even though the vendee has instituted Chapter X reorganization proceedings. This principle was clearly enunciated in In re Lake's Laundry, 2 Cir., 1935, 79 F.2d 326, a case involving the then Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207.

■ Surely, after a reasonable time necessary to ascertain ownership, retention of another's property for the use of a bankrupt estate should bring compensation, particularly if there is an agreement made by the trustee, as in this case.

In disallowing the petitioner's claim for compensation the Referee argued as follows:

"The Receiver and Trustee in Bankruptcy did not use said machines and therefore cannot be charged rental therefor. (Daterson Publishing Co., 3 Cir., 188 F. 64, 26 A.B.R. 582)."

\* &ast; \* \* \* \*

"Chapter X of the Bankruptcy Act was passed so that a failing debtor could have a chance to find out whether a plan could be devised which would satisfy the Court and the creditors. If the Debtors must give up their property immediately to reclaiming creditors, they could never agree to a plan and Chapter X would be useless. The Petitioners did not file their Reclamation Petition until December 4, 1956 and the Order in Reclamation was entered on January 9, 1957."

But as stated in In re Sun Cab Co., D.C.D.C.1946, 67 F.Supp. 137, 139:

"It does not appear equitable to permit the debtor corporation to retain possession of the taxicabs, continue its business, while the taxicabs are depreciating, and fail to pay the balance due on the vehicles, shifting the risk of loss to the vendors."

The above language seems quite pertinent to the instant case, on the rationale that petitioner would not have permitted his equipment to remain in the debtor's hands were it not for the letter of November 5, 1956. At the time of Newjer's application on November 1, 1956 for a Chapter X reorganization, Newjer was in default in its payments on the equipment and the Bank had the right to reclaim. But the Receiver did use the machines from November 1, 1956 at least until snow intervened on November 21, 1956. We have seen that it has been held that a conditional vendor is entitled to possession of his property in the face of Chapter X proceedings, In re Lake's Laundry, supra. But granting validity to the theory of the Referee that immediate reclamation by a creditor could frustrate Chapter X rehabilitation, it would not be justifiable to deny both the return of the creditor's reclaimable property as well as compensation for its use.

■ The question remains therefore as to the period of time for which a rental allowance should be granted in this case. Both Daterson and Barth, as the Referee pointed out, hold that a reasonable time must be afforded to the Trustee to determine matters of title and to obtain appraisals of the property in question in order to aid him in deciding whether to accept or reject the conditional sales contract.

The Bank petitioned for reclamation on December 4, 1956 and it was granted on January 9, 1957. The appraisal of the equipment, as stated earlier, was submit-

---

1. The practical result would be the same if the Trustee had in mind a "time payment arrangement" (the equivalent of a conditional contract of sale).

ted on January 7, 1957. Although the time spread might understandably appear to the petitioner as being unnecessarily long, it is neither unreasonable nor excessive. This is not to say, of course, that methods of expediting such matters might not be improved upon.

It would, however, seem fair to say that this period of time, which normally would have been used in reclamation and related proceedings, should not be computed for rental time. This would leave the period from November 5 to December 4 as the compensable rental period for which the $3,520 figure would appear to be fair in the light of the original contract, the testimony and affidavit concerning rental values of like equipment.

Accordingly the Referee's conclusions will be modified and the petition will be granted to the extent allowed herein. An order to that effect should be submitted with consent as to form or noticed for settlement.