In re ALAN WOOD STEEL
COMPANY, Debtor.

**Bankruptcy No. 77–930EG.**

United States Bankruptcy Court,
E. D. Pennsylvania.

Jan. 10, 1980.

James G. Sheehan, Montgomery, McCracken, Walker, & Rhoads, Philadelphia, Pa., for debtor.

Edward C. Toole, Jr., Clark, Ladner, Fortenbaugh & Young, Philadelphia, Pa., and Frank Marcellino, Abberley, Kooiman, Marcellino & Clay, New York City, for Wm. H. Muller & Co.

Nathan Lavine, Adelman & Lavine, Philadelphia, Pa., for receiver.

Michael L. Temin, Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., special counsel to receiver.

Fell, Spalding, Goff & Rubin, and Sklar, Pearl, Lichtenstein & Sklar, Philadelphia, Pa., for Creditors' Committee. .

OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

The issue before us springs from the receivers' objections to a cost of administration proof of claim (No. 3130) filed by Wm. H. Muller and Co., Inc. ("Muller"), seeking damages ($301,119.47) and interest ($98,-404.16) arising out of the alleged wrongful

detention by the receivers of a quantity of iron ore which had been shipped by Muller to Alan Wood Steel Co. ("the debtor"). While Muller's original effort to reclaim this ore met with success before us, on appeal, the case was remanded to us for further consideration. Once again we found for Muller and the receivers again appealed. Our ruling allowing reclamation has now been affirmed. Muller's contention on the issue *sub judice* is that the present return of the ore will not make it financially whole, since the ore's value has substantially declined during the more than two-year period of its detention. In its proof of claim Muller seeks to charge the estate for the consequences of that detention, since the receivers sought to keep the ore for the benefit of the estate.

Muller asserts its damages under Section 64(a)(1) of the Bankruptcy Act, 11 U.S.C. § 104(a)(1), as an administrative expense of the estate. That subsection gives priority to the payment of expenses and costs of administration over the claims of other creditors of the debtor. We have jurisdiction to hear such claims by virtue of Section 2(a)(2) of the Bankruptcy Act, 11 U.S.C. § 11(a)(2). We have concluded, after careful consideration of the testimony and the excellent memoranda of law presented by the litigants, that Muller's claims for damages and interest should be disallowed.

Muller also contends that it is entitled to a "contingent and unliquidated administrative claim, representing the value of the difference (if any) between 25,325 long tons as delivered and accepted for bailment, and the amount which claimants can [sic] actually reclaim from the debtor's premises." Stripped of its legalese, this portion of Muller's claim, admittedly wholly contingent and unsupported by facts, asserts a possible claim for possible loss which might possibly be suffered by Muller in the event that the ore, when returned to Muller, would weigh less than the amount delivered. This claim is too speculative, too devoid of supporting facts, to merit our present consideration. It, too, will be disallowed.

The basic controversy arises out of a shipment by Muller, a Brazilian based mining company, of 25,325 long tons of course grade iron ore from Rio de Janeiro to Philadelphia in May and June of 1977. On June 6, 1977, the ore arrived by train at its current site on the debtor's premises in Conshohocken, Pa. While we have ruled that there was no contract of sale, there was evidence that the proposed price of the ore was $801,119.47.

On June 10, four days after receipt of the ore, the debtor filed a petition under Chapter XI of the Bankruptcy Act. Muller thereafter cancelled the offer to sell and demanded return of the ore on June 14. It followed up on that demand by filing a complaint seeking reclamation on June 16, 1977. On the same day, Muller applied for a restraining order to prevent the receivers from using or selling the ore. This application having been denied, Muller appealed and sought a supersedeas. This we granted and an order was entered enjoining disposition of the ore pending the appeal, upon the entry of a $250,000.00 bond by Muller. Muller subsequently dropped the appeal after the parties agreed that the receivers would give notice to Muller of any intention to sell the ore so that Muller could then post bond.

On July 6, 1977, counsel for the receivers proposed a joint sale of the ore by the parties with the proceeds to be placed in an interest bearing escrow account. The parties would thus relegate their claims to the ore to the fund created. This proposal was rejected by Muller. Again in November, a second attempt at a joint sale of the ore failed. The receivers, nevertheless, came up with a prospective buyer on December 6, 1977, (one Crucible, Inc.), which offered a price of $509,000.00. Muller's response was to post its supersedeas bond and, as a result, the sale was never consummated.

On July 14, 1978, we granted reclamation to Muller, finding that the delivery of the ore was a bailment and that Muller was entitled to possession of its ore. On appeal that decision was vacated by the district court and the case was remanded for fur-

ther consideration. Meanwhile, the parties continued their efforts to arrive at mutually agreeable terms for the sale of the ore. The major obstacle throughout has been that Muller has demanded an "unfettered right" to possess the ore without "conditions." Muller maintains that at no time has it been offered the possession of the ore without a string of conditions that would compromise its rights. The receivers, on the other hand, have insisted on court approval and the escrowing of the proceeds of any sale.

On June 21, 1979, upon reconsideration on remand, we once more allowed reclamation and the receivers again appealed. Shortly thereafter, while the appeal was pending, Muller filed the proof of claim which is now before us, seeking damages and interest. Despite the fact that the district court has now affirmed our order allowing reclamation, Muller has not taken possession of its ore. It seeks, in addition to its adjudicated right to possession, the allowance of its claim for the difference between the projected contract price of $801,119.47 and the current estimated fair market value of the ore which, it says, dropped soon after its delivery in June, 1977, to $500,000.00.

Initially, we address the issue of whether the claims as presented constitute expenses of administration that are priority claims under Section 64(a). We conclude that § 64(a) applies in proceedings under Chapter XI by virtue of § 302 of the Bankruptcy Act, 11 U.S.C. § 702. *In re Yellow Cab Company,,* 17 Collier Cases 705, 707 (S.D. Cal.1978). We further find that the claims, if sustained on their merits, are indeed priority claims within the meaning § 64(a).

The United States Supreme Court has held, in *Reading Company v. Brown,* 391 U.S. 471, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968), that tort claims against the receivers are administrative costs and expenses under § 64(a). We would not, as counsel for the receivers have urged us, limit the Court's holding to negligence claims against the receiver. We find no such limiting language in the Court's opinion. Furthermore, there are cases allowing priority for administrative claims other than for negligence. *See, e. g. In re Edna Grace Gossage,* 6 Collier Cases 423 (W.D.Mo.1975) [claim for breach of contract allowed as an administrative expense]. Since Muller's claim is essentially a damage claim arising out of tortious trespass to chattels (see discussion below), we have no problem in applying *Reading, supra,* to the facts here. Muller argues that the claims should be allowed as administrative expenses because the intent of the receivers was to preserve the estate for the benefit of the debtor's creditors. Thus, it reasons, the damages should equitably be borne by the estate. On the rationale of *Reading,* however, we would take this argument even further. The Court there did not apparently deem it necessary to find that the receiver's negligence in causing fire damage to adjacent property came out of efforts to preserve the estate. The nature of the tort claim, regardless of the receiver's intentions, may give rise to an administrative expense. Evidence of intent, however, may have a bearing on whether a tort was, in fact committed (see discussion below).

Muller's theory of recovery rests on a concept of "wrongful bailment", which, it contends, merely follows through on our findings with respect to the existence of a bailment and Muller's right to reclaim the ore. The crux of Muller's argument is that, just as one who replevies bailed goods may recover damages for wrongful detention under common law, so, too, may one who reclaims goods under bankruptcy law recover damages.

Torts arising out of trespass to chattels and conversion most nearly resemble the common law claims that Muller asserts. When a bailee, originally in rightful custody of property, wrongfully refuses to surrender the property on demand to the owner, an action either for the full value (conversion) or for damages (trespass to chattels) will lie. *See* Restatement 2d Torts §§ 216, 222 et seq. (hereinafter "Restatement"). In Pennsylvania, conversion is defined as "the deprivation of another's right of property in, or use or possession of,

a chattel without the owner's consent or *legal justification*" (emphasis supplied). *Welded Tube Co. of America v. Phoenix Steel Corp.*, 512 F.2d 342, 345 (3d Cir. 1975). *See generally, Spickler v. Lombardo*, 3 Pa.D. & C.3d 591, 600–608 (C.P.Somerset County, 1977). The essential element of this kind of tort is *wrongful* behavior, evidenced by the absolute or unjustified refusal to return the property. *See generally*, Restatement, §§ 238–240. A qualified refusal where the claim is doubtful and where the bailee has not laid adverse claim to the property so as to exclude assertion of the owner's rights, will not give rise to damages. See *Bradley v. Roe*, 282 N.Y. 525, 27 N.E.2d 35 (1944); *see generally*, Restatement § 240.

In the present case, Muller has assumed, without proving, that the detention of the ore was wrongful, since the court eventually granted reclamation. The receivers have asserted that they had good faith doubts as to the validity of Muller's title and were therefore under a duty to submit the dispute to this court for determination. This duty, they argue, stemmed from their capacity as fiduciaries as well as officers of the Court. We agree with the receivers.

■ In bankruptcy reclamations, the privilege to reclaim is not absolute, and its exercise may be subject to reasonable delays. *Barth Equipment Co., Inc. v. Perlstein*, 128 F.2d 253, 254 (2d Cir. 1942). In *Barth*, the facts were somewhat similar to the present case in that certain equipment in the possession of the debtor was reclaimed by the owner when the former filed a Chapter XI petition. The court there implied that the time necessary for judicial determination of title might constitute a reasonable delay in restoring possession to the owners; although the case was decided on the grounds that the owner failed to prove its damages. Relying on *Barth*, a district court in this circuit held that the time consumed in judicial proceedings does not count as part of the period of wrongful detention. *In re Newjer Contracting Co., Inc.*, 154 F.Supp. 567, 571 (D.N.J.1957). See also *In re Spanish Language Television of Arizona, Inc.*, 456 F.2d 159 (9th Cir. 1972), *In re White Plains Ice Service, Inc.*, 109 F.2d 913 (2d Cir. 1940), *In re Daterson Publishing Co.*, 188 F. 64 (3d Cir. 1911).

■ We are of the opinion that the receivers' acts in this case were proper and justified. They were under a duty to preserve the assets of the estate and to examine all claims asserted against those assets. Since all of the property was under the jurisdiction of the bankruptcy court pursuant to Chapter XI, Section 311, 11 U.S.C. § 711, we conclude that Muller had no immediate, unquestioned and absolute right to the ore under the circumstances. Judicial determination of the disputed title here was reasonable and the consequential delay could have been anticipated by the parties. In fact, no later than twenty days after Muller demanded the ore, the receivers proposed that it be sold and that a fund be created to await the eventual winner of the dispute. There was testimony by Robert Levin, Esq., of counsel for the receivers, that this proposal was rejected out of hand by Muller. Muller, on the contrary, contends that all proposals by the receivers to sell the ore were replete with "conditions" unacceptable to Muller. We accept Mr. Levin's version that, early on, Muller rejected any idea of a joint sale without regard to the substance of any conditions that might be imposed. We are so impelled because Mr. Levin testified and we conclude that the July 6th negotiations never got far enough along to reach the area of conditions. Muller has presented no credible evidence of specific conditions that the receivers sought to impose on that date. If Muller considers the receiver's suggestion that the parties relegate their claims to the fund to be a condition, then we disagree. Muller could have taken steps to preserve its rights, vis-a-vis the possibility of some missing ore, by specifying, in its agreement with the receivers, the amount of ore to be sold. We find no other rights that the sale would have compromised. Muller would then have been assured that any sale would have resulted in the receipt and escrowing of the proposed contract price, since there is no

reason to believe that the fair market value dropped so soon after the deal with the debtor was aborted. Further, Muller would have received the very interest it seeks today as damages if it had consented to the proposal to escrow the proceeds. Later negotiating barriers asserted by Muller relate to efforts to sell the ore after the market value had substantially declined. Therefore, the only relevant attempt at agreement was on July 6th and we conclude that Muller was responsible for its failure.

Muller argues that the receivers' detention of the ore was wrongful and, as such, "constitutes a tort, in the nature of conversion, for which recovery of damages is permitted." We disagree because we do not accept Muller's premise that *every* detention is *per se* wrongful. In Pennsylvania, conversion is defined as the deprivation of another's property rights in a chattel that is wrongful, without legal justification or consent: *Welded Tube Co. of America v. Phoenix Steel Corp.*, 512 F.2d 342, 345 (3d Cir. 1975); *Spickler v. Lombardo*, 3 Pa.D. & C.3d 591, 600–608 (C.P.Somerset Co.1977).

Considering the reasonableness of the receivers' good faith doubts as to title (as witnessed by our original opinion, the expressed doubts on appeal by the district court resulting in the remand, and our second opinion which was affirmed) we conclude that the receivers' detention of the ore pending a court adjudication was not wrongful but was in keeping with responsibility to preserve the assets of the estate. Having so concluded, it follows that the retention of the ore by the receivers did not constitute a tortious conversion, since it was not wrongful and was justified: *In re Spanish Language Television of Arizona, Inc.*, 456 F.2d 159 (9th Cir. 1972); *Barth Equipment Co., Inc. v. Perlstein*, 128 F.2d 253, 254 (2d Cir. 1942); *In re White Plains Ice Service, Inc.*, 109 F.2d 913 (2nd Cir. 1940); *In re Newjer Contracting Co., Inc.*, 154 F.Supp. 567, 571 (D.C.N.J.1957).

It follows that Muller's claim for interest, like its claim for damages, being predicated on the concept of *wrongful* detention, must also fail. The cases cited by Muller: *Armstrong & Latta v. City of Philadelphia*, 249 Pa. 39, 94 A. 455 (1915); *Motors Mortgage Corp. v. Hagerling*, 106 Pa.Super. 148, 161 A. 447 (1932); are inapposite since they deal with the awarding of interest where the property detained was wrongfully held. And the delay in determining Muller's right to the possession of the ore in this, and in every bankruptcy case, is an act of the law and a necessary incident to such proceedings: *Thomas v. Western Car Co.*, 149 U.S. 95, 117, 13 S.Ct. 824, 37 L.Ed. 663 (1893).

This opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.