### In the Matter of LUCASA INTERNATIONAL, LTD., Debtor.

### Harold YOUNG, as Trustee in Bankruptcy of Lucasa International, Ltd., Debtor-Plaintiff,

v.

### REPUBLIC NATIONAL FACTORS CORPORATION, Defendant.

Bankruptcy Nos. 79–B–10062, 80–5006–A.

United States Bankruptcy Court, S. D. New York.

Aug. 17, 1981.

---

**4.** See House Report No. 95–595, 95th Cong., 1st Sess. 375, U.S.Code Cong. & Admin.News 1978, 5787.

Horvath & Young, New York City, for trustee; by Harold Young, New York City, of counsel.

Sherman & Citron, New York City, for defendant; by Howard A. Karasik, New York City, of counsel.

## OPINION

ROY BABITT, Bankruptcy Judge:

The trustee in bankruptcy of Lucasa International, Ltd., (Lucasa or debtor), a debtor under relevant provisions of the 1978 Bankruptcy Code,[1] following the adversary proceeding route of Part VII of the Bankruptcy Rules, Rules 701 *et seq.*, 411 U.S. 1068, 93 S.Ct. 3147, 36 L.Ed.2d XXXVII *et seq.*,[2] filed a complaint, Rule 703, to recover just under $100,000. from the defendant, Republic National Factors Corporation (Republic), a proper adversary proceeding under Rule 701(1).

The complaint alleged the elements of a preference voidable by a bankruptcy trustee under 11 U.S.C. § 547(b).

Republic first interposed an answer consisting of general denials and alleged as a defense that at the time of the transfer it was a secured creditor. Republic then moved pursuant to Rule 56, F.R.Civ.P., applicable in adversary proceedings by the

---

1. The 1978 bankruptcy reform statute, Pub.L. 95–598, 92 Stat. 2549–2688, U.S.Code Cong. & Admin.News 1978, p. 5787, became effective on October 1, 1979 and operative on petitions filed on and after that day, as here. Section 402(a) of its Title IV insists that this be so. Section 401(a) repealed the 1898 Act.

Title I of the 1978 statute is the substantive bankruptcy law—the Code. Under Section 101 sections of the Code are cited in this way: 11 U.S.C. § ____. Supplement III to the 1976 edition of Title 11, United States Code, carries the new bankruptcy statute.

2. The 1973 bankruptcy rules are procedural implementations of the 1898 Act promulgated under the authority conferred by 28 U.S.C. § 2075. As such, they continue to fit well with the 1978 Code unless inconsistent. Section 405(d) of Title IV of the 1978 statute makes this clear. Part VII of the Interim Bankruptcy Rules drafted by the Advisory Committee on Bankruptcy Rules of the Judicial Conference of the United States and adopted here has not seen fit to revise Part VII of the 1973 Rules.

force of Rule 756, 411 U.S. 1084, 93 S.Ct. 3147, 36 L.Ed.2d XXXVII, for summary judgment dismissing the complaint. The statement of material facts called for by then District Court Rule 9(g) was annexed along with affidavits and documents all of which are permitted by Rule 56.[3]

The controlling facts alleged by Republic were that it had a perfected security interest in Lucasa's property pursuant to a secured transaction reaching back to December 4, 1978, well outside the ninety day period preceding the filing of the bankruptcy petition in October, 1979, one of the touchstones of a suit to void a preference, 11 U.S.C. § 547(b)(4)(A).

The trustee's counter-statement of his view of the controlling facts was that Republic's security interest was unperfected because improperly filed in New Jersey rather than in New York in his understanding of applicable Uniform Commercial Code sections (U.C.C.). Republic countered with further affidavits to the effect that there had been proper filing in New Jersey and therefore timely perfection within 11 U.S.C. §§ 547(e)(1)(B) and 547(e)(2).

The issue thus raised by the papers is whether or not the means taken by Republic to perfect its security interest constitutes proper perfection as against the trustee. If so, that perfection of the lien of the security interest, 11 U.S.C. § 101(37), is outside the ninety day period. Republic is properly secured, its receipt of the funds yielded by its collateral is proper, there is no preference, and the trustee's suit must fall. This is so because as a properly secured creditor realizing on its collateral, Republic is not receiving more than it would if the trustee were to have liquidated and paid Republic from the proceeds of the sale of that collateral.

If, on the other hand, there was improper perfection within the requirements of the U.C.C. to support a secured status, then, as an unsecured creditor, Republic had no better right to the money than any other such creditor holding an antecedent debt, and

with the other elements of 11 U.S.C. § 547(b) not really in dispute, the trustee should prevail. See *Corn Exchange Bank v. Klauder*, 318 U.S. 434, 63 S.Ct. 679, 87 L.Ed. 884 (1943).

The linchpin of the trustee's action is the content of the U.C.C. 1, the financing statement needed to perfect a secured status. He argues that the address there set forth was not the debtor's principal place of business and was not a mailing address and therefore would fail to apprise the debtor's creditors of Republic's lien on the inventory. That being so, the filing of such a defective U.C.C. 1 is not perfection. The filed U.C.C. 1 indicated Lucasa's address as follows:

"Lucasa International, Ltd.
c/o Sultan Chemists
_____ Ludlow Avenue
Cranford, New Jersey."

(The building number was illegible on the copy furnished the court. The trustee raises no issue as to the building number set forth in the filed document).

"Because the question whether summary judgment is appropriate in any case is to be decided upon the particular facts of that case", *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 259, 88 S.Ct. 1575, 1577, 20 L.Ed.2d 569 (1968), the court finds these to be the ones controlling: Republic and Lucasa entered into a factoring agreement on May 1, 1978. This agreement granted to Republic a security interest in Lucasa's inventory. Pursuant to this agreement, Republic advanced a substantial amount of money to Lucasa, and as of October 2, 1979, Lucasa was indebted to Republic in the sum of $98,157.85. Further, pursuant to the factoring agreement, Republic filed a U.C.C. 1 financing statement in the State of New Jersey on or about December 4, 1978. On or about October 2, 1979, Lucasa made a bulk sale of its inventory located in New Jersey to Tandy Brands, Inc. for $250,000. On that date, Tandy remitted the sum of $98,157.85 out of the gross price directly to Republic.

---

**3.** The full sweep of Rule 56, F.R.Civ.P., including the allocations of the burdens, applies in a bankruptcy adversary proceeding. See *Gorenz*

*v. State of Illinois Department of Agriculture*, 653 F.2d 1179 (7th Cir. 1981) at footnote 13.

It is on these facts that the trustee contends that a voidable preference occurred. His point is that Republic was not a secured creditor and the payment to it by Tandy was a transfer of the debtor's property within the period proscribed by 11 U.S.C. § 547(b)(4)(A).

■ In order that a financing statement be considered "properly filed", the court looks to the state law governing the filing. As Lucasa had its principal place of business in New York, the court turns to New York's version of the Uniform Commercial Code (N.Y.U.C.C.) to determine where Republic had to file and what form the U.C.C. 1 had to take. Section 9–103(1)(b) of the N.Y.U.C.C. states what is commonly known as the "last event test". Under this test, the law of the jurisdiction in which the "last event occurs on which is based the assertion that the security interest is perfected or unperfected" governs where a secured party is to file as to the collateral. The official comments to the section explain that the last event will frequently be the filing, as was the case here. N.Y.U.C.C. § 9–402, Comment # 1 (McKinney).

In this action, since the collateral was located in New Jersey and the last event for perfection was the filing of the financing statement, the laws of New Jersey and its Uniform Commercial Code (N.J.U.C.C.) are controlling with respect to the filing requirements. In actuality, however, there is no need for this determination as New Jersey has recently adopted the 1972 amendments to the Uniform Commercial Code, which New York had previously adopted and which makes the statutes of both states identical. Under N.J.U.C.C. Section 12A:9–402(1), the U.C.C. 1 need only contain (for the purposes of this dispute) a mailing address of the debtor. This U.C.C. 1 did contain a mailing address of the debtor and it is on this address which the trustee seizes to support his suit.

Thus, attention must focus upon whether or not the address on the U.C.C. 1 was sufficient to comply with the governing statue and its policy.

■ The policy underlying the U.C.C. filing requirements is to afford notice that a security interest may exist in the collateral described, and that further inquiries from the parties concerned will be necessary to disclose the full nature of the relationships. N.J.U.C.C. Section 12A:9–402: Comment # 2. Once *substantially complied with*, a U.C.C. 1 will be effective although it contains minor errors which are not seriously misleading. N.J.U.C.C. Section 12A:9–402(5), (Section 9–402(8) in the 1972 revision of Article 9).

Most courts have held that so long as the U.C.C. 1 provides adequate notice of the possible existence of a security interest, an omission of the debtor's address or a minor error in such address will not invalidate the financing statement "unless it is shown that some third party was actually misled by the U.C.C. 1 as filed". *See*, Annot., 99 A.L.R.3d 807, 813 (1980). Where the U.C.C. 1 contains any address through which the credit searcher may contact the party in question, courts hold the form effective. J. White & Summers, *Uniform Commercial Code*, p. 960 (2d ed. 1979).

Here, Republic filed in the correct state and listed an address where the debtor could be reached. It would seem that if a diligent credit searcher knew in the first place that the debtor had some collateral in New Jersey then he would not be misguided by the address since he could always contact the debtor's main place of business. In fact, there was no reason for any credit searcher to be deceived by the address. According to Anthony F. Cutaia, an officer of Lucasa, the address was known by all shippers as the place to deliver all goods that Lucasa ordered within one year of its bankruptcy.[4] Thus, the fact that all, or any, knew of this "warehouse" in New Jersey, makes it a fair assumption to say that Lu-

4. This information comes from Cutaia's affidavit in which he states that Lucasa had maintained its inventory at the address in New Jersey for one year prior to the bulk sale and that all suppliers were directed to ship all goods to that address.

casa's creditors knew of the New Jersey warehouse since most were suppliers. Therefore, creditors of the debtor would be directed to search the New Jersey records for filed U.C.C. 1's signifying perfected security interests in the debtor's collateral.

Our Court of Appeals, sixteen years ago, announced the standard by which a U.C.C. 1 is to be judged. *In re Excel Stores, Inc.,* 341 F.2d 961 (2d Cir. 1965). (Use of Excel Department Stores instead of true name "Excel Stores, Inc." in financing statement was a "minor error" and not seriously misleading). The court held that a U.C.C. 1 must be *seriously misleading* in order for it to be held ineffective. This teaching is in accord with the policy of the Uniform Commercial Code and remains the standard today. The court noted that the sole purpose for the filing of a simple notice (the U.C.C. 1) is to give the "minimum information necessary to put any searcher on inquiry". *In re Excel Stores, Inc., supra,* at 963.

The trustee offers a few cases to persuade the court to sustain his suit. But these are distinguishable. In *White Star Distributors, Inc. v. Kennedy,* 66 App.Div.2d 1011, 411 N.Y.S.2d 751 (4th Dept. 1978), the court held that U.C.C. 1 ineffective because of numerous errors. The failure to *include* an address though, was not held to be an invalidating omission. *In re Smith,* 205 F.Supp. 27 (E.D.Pa.1962), is one of the few cases to actually say that the omission of an address is a material omission. But, the discussion of the requirements of a financing statement was dictum as there had been no filing at all.

The trustees also contends that the address on the U.C.C. 1 must be the address at which the debtor actually conducts its business. He cites in support *In re P.S. Products Corp.,* 435 F.2d 781 (2d Cir. 1970). But that case dealt with the address of a debtor *only* for filing purposes and not with the address requirements necessary for an effective U.C.C. 1. The trustee argues, however, that since the debtor's principal place of business was at 540 Madison Avenue, New York City, a fact conceded by the defendant, this U.C.C. 1 should have con-tained the debtor's New York address. But there is no legal basis for this proposition. When the function of the U.C.C. 1 is to afford notice to new creditors that a debtor's physical assets are already subject to a security interest, or if none is filed, that those assets are free assets, it makes good sense that such information will be found in the place where the debtor's assets are generally known to be located. Here, New Jersey is that place.

The most drastic error that could be made in the address part of U.C.C. 1 is its total omission. But, it has been held that the omission of a debtor's address from a U.C.C. 1 does not, as a matter of law, prevent such a financing statement from perfecting a security interest. *In re Smith's Bankrupt Estate,* 508 F.2d 1323 (5th Cir. 1975); *In re Fowler,* 407 F.Supp. 799 (D.C.Okla.1975), and *General Electric Credit Corp. v. Aurora Mobile Homes, Inc.,* 37 Cal. App.3d 1016, 112 Cal.Rptr. 735, 14 UCC Rep.Ser. 495 (4th Dist. 1974), are in accord.

■ Although the court must view the inferences to be drawn from the underlying facts in the light most favorable to the non-moving party (the trustee), *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–9, 90 S.Ct. 1598, 1608–9, 26 L.Ed.2d 142 (1970), this court is of the opinion that he has failed to show that the address on the U.C.C. 1 was more than a minor error and thus "substantially misleading".

The fact that all suppliers were told to ship to the New Jersey address for a year, added to the fact that Republic filed a properly executed U.C.C. 1 under the laws of both New York and New Jersey, leads this court to the conclusion that this U.C.C. 1 is effective and has not ignored the standard of *Matter of Excel Stores, Inc., supra.* Republic was therefore a properly secured party when it received from the proceeds of the sale of the debtor's property the value of its interest in that property, which collateralized its extensions of credit.

Thus, there is no reason to expound on the trustee's second argument that the indirect remittance of the $98,157.85 was a transfer fitting within the requirements for

a voidable preference under 11 U.S.C. § 547(b). Once it is ascertained that Republic had a perfected security interest in the goods, the voidable preference suit must fall. This is so because a secured party "cannot be regarded as having received any preference since such creditor does not receive any more than such creditor would receive in liquidation under Chapter 7 of the Code." *In re Castillo*, 7 B.R. 135, 3 C.B.C.2d 351 (Bkrtcy.S.D.N.Y.1980). Under 11 U.S.C. § 547(b)(5), the transfer must enable the creditor to receive more than other creditors in his class. Here the bulk sale was for $250,000. of which Republic received $98,157.85, the value of its security. It received no more.

Accordingly, summary judgment is granted in favor of the defendant Republic, dismissing the complaint without costs.

Submit an order.