## In the Matter of FLAGSTAFF FOOD-SERVICE CORPORATION, et al., Debtors.

### Bankruptcy Nos. 81–B–11430 to 8J–B–11436.

United States Bankruptcy Court, S. D. New York.

Dec. 23, 1981.

Levin & Weintraub by Elias Mann, New York City, for debtors.

Angel & Frankel, P.C., New York City, for Creditors' Committee; Joshua J. Angel, Sanford P. Rosen, New York City, and Emmett Creahan, (Law Clerk) of counsel.

Wachtell, Lipton, Rosen & Katz, New York City, for General Electric Credit Corporation; Bernard Mindich and Michael S. Himmel, New York City, of counsel.

## OPINION

ROY BABITT, Bankruptcy Judge:

The sole issue presented on this multi-faceted motion brought by the committee of unsecured creditors in the Chapter 11 cases of Flagstaff Foodservice Corporation and several of its affiliates (collectively "Flagstaff") is whether General Electric Credit Corporation ("GECC"), a long-time lender to the debtors, has a valid security interest in the accounts and inventory of one of the debtors. Flagstaff Foodservice Corporation of New England ("FFNE"). Resolution of this issue depends on the terms of Section 9–403(1) of the Massachusetts Uniform Commercial Code ("U.C.C."), *Mass.Ann. Laws*, Ch. 106, concerning perfection of security interests, a *sine qua non* of validity.

These Chapter 11 petitions by Flagstaff, engaged in various aspects of the food business, were filed on July 21, 1981 under applicable provisions of the 1978 Bankruptcy Code,. Sections 1101 *et seq.*, Pub.L. 95–598, 92 Stat. 2549 *et seq.*, 11 U.S.C. (1976 ed. Supp. IV) §§ 1101 *et seq.*

Flagstaff's business was financed by GECC which advanced funds pursuant to a November, 1978 loan agreement. Flagstaff's assets collateralized the liabilities to GECC.

To continue funding its operation, Flagstaff, as debtor in possession pursuant to Sections 1101(1), 1107(a) and 1108, moved by order to show cause on notice [1] to its ten largest creditors and to the United States Trustee [2] for a hearing to consider its application to borrow money from GECC on a secured basis.[3] On July 29th, following the hearing, the court entered an order authorizing Flagstaff to borrow on a secured basis in a manner substantially similar to the terms of the pre-Chapter 11 arrangement.

Thereafter, a committee of unsecured creditors ("Committee") was appointed, Section 151102(a), and it retained counsel, Section 1103.[4] The Committee then began its investigation into the acts, liabilities and financial condition of the debtor in possession. Section 1103(c)(2). In order to verify the validity of GECC's security interest, counsel for the Committee requested copies of all security agreements and financing statements relating to the debtor's pre-Chapter 11 financing activities.

Relevant to its security interest in the accounts receivable and inventory of FFNE, GECC produced (1) a copy of a financing statement indicating that the original had been filed with the Secretary of the Commonwealth of Massachusetts; (2) a letter dated September 1, 1978 from counsel to GECC to the Town Clerk of Attleboro, Massachusetts, accompanied by a check limited to $10.00 and a financing statement; (3) an unstamped financing statement bearing no evidence of its receipt in Attleboro or the date or the time of its filing; (4) a certified mail receipt indicating that the letter and financing statement were received on December 4, 1978 by one B. Jordan,[5] bearing the address of the Town Clerk of Attleboro.

It is undisputed that Flagstaff maintains one place of business in Massachusetts, that located in Attleboro. And it is agreed that U.C.C. § 9–401(1)(c) [6] requires a dual filing, *i.e.*, in the office of the Secretary of State, a filing not at issue here, and also in the office of the Town Clerk in Attleboro, very much the issue in this dispute. On the evidence described earlier, the efficacy of

1. As the proposed financing agreement contained provisions for cross-collateralization, this court was mindful of and heeded the teachings of *In re Texlon Corp.*, 596 F.2d 1092 (2d Cir. 1979), from the standpoint of notice.

2. This is a United States Trustee Pilot district. Section 1501(2) of the Code.

3. As an interim measure, the court approved a stipulation between Flagstaff and GECC authorizing Flagstaff to use the latter's cash collateral in an amount not to exceed $750,000. See Section 363(c)(2).

4. Section 1102(a) of the Code provides for the appointment of committees by the Bankruptcy Court. In United States Trustee pilot districts, fn. 2, *supra*, the appointment is by that officer as explained in Section 151102, one of the sections of Chapter 15 of the 1978 bankruptcy sections which sets forth the duties of the United States Trustee in cases of all kinds under the Code.

5. At oral argument the Committee argued that the financing statement had been sent to the wrong person, as B. Jordan was not Attleboro's Town Clerk. Furthermore, counsel stated that

he telephoned the Attleboro Town Clerk's office and was told there never had been a B. Jordan employed there.

This court must reject out of hand whatever the Committee thinks it can do with this scenario. First, it certainly cannot be expected that the clerk himself would be involved with the ministerial task of receiving mail. Secondly, the staff of a busy clerk's office constantly changes; that no one remembers a B. Jordan working at the Attleboro Clerk's office in 1978 should come as no surprise. As the letter was properly addressed, and there is a stamped receipt, it is accepted that it arrived at the proper place.

6. "§ 9–401. Place of Filing; Erroneous Filing; Removal of Collateral.

(1) The proper place to file in order to perfect a security interest is as follows:

(c) in all other cases, in the office of the state secretary and in addition, if the debtor has a place of business in only one town of this state, also in the office of the clerk of such town, or, if the debtor has no place of business in this state, but resides in the state, also in the office of the clerk of the town in which he resides."

GECC's filing must be tested by U.C.C. § 9–403(1) [7] which states that

"Presentation for filing of a financing statement and tender of the filing fee or acceptance of the statement by the filing officer or register of deeds constitutes filing under this Article . . . ."

Based upon these words and the fact that GECC could provide no proof that the financing statement was actually indexed by the town clerk, the Committee brought on this motion the heart of which seeks relief from the July 29 financing order as it relates to FFNE and its assets. Rule 924, 411 U.S. 1102; Rule 60 F.R.Civ.P. See *In re Emergency Beacon Corporation, Montco, Inc. v. Barr,* 666 F.2d 754 (2nd Cir. 1981), for a thorough discussion of a Bankruptcy Judge's power to grant relief from a prior order.

█ In seeking repudiation of that order, the Committee takes the position that the court should not have put its seal of benediction on a secured status for GECC pre-Chapter 11 petition because it had no such status.[8] The Committee comes to the conclusion that GECC is not secured because, it is argued, its security interest is invalid in that it was not perfected as the necessary financial statement was never filed in Attleboro as required by the U.C.C. The Committee believes GECC has fallen short of the duty of good faith insisted upon in respect of every duty imposed by the U.C.C. See U.C.C. § 1–203.[9] The Committee reasons that this general principle of good faith placed GECC under a duty of investigation since three years had elapsed between the mailing of its financing statement and Flagstaff's Chapter 11 petition, in all of which time GECC had not received its cancelled check nor a copy of a properly stamped financing statement.

GECC, on the other hand, stands by the perfection of its security interest, calling attention to its careful preparation [10] and forwarding of the financing statement in compliance with the language of the statute. In short, GECC relies on the clear language of U.C.C. § 9–403(1) as support for its position that its security interest was perfected upon presentation [11] by mail and tender of the appropriate filing fee.

Section 9–403(1) of the U.C.C. prescribes the precise point in time when perfection by

---

7. This language is nearly identical to Section 9·403(1) of the Uniform Commercial Code as adopted by most jurisdictions, including heavy commercial jurisdictions such as New York and Pennsylvania. See *Uniform Laws Annotated,* Uniform Commercial Code, § 9–403. It should be noted that a fundamental purpose of the U.C.C. was to make uniform the laws among the various jurisdictions. U.C.C. § 1–102(2)(c). Cases from other jurisdictions therefore serve as guidance and help fulfill Judge Friendly's 1966 prophecy in *United States v. Wegematic,* 360 F.2d 674, 676 (2d Cir. 1966) that the U.C.C. was then "well on its way to becoming a truly national law of commerce."

8. The Committee is a proper party to seek relief from this court's financing order as the unofficial committee was on notice that the debtor's assets were being liened, a matter vital to unsecured creditors. See *In re Texlon Corp., supra,* fn. 1. This action by the Committee is unlike actions belonging to a trustee only. Compare *Matter of Monsour Medical Center,* 2 C.B.C.2d 1363, 6 B.C.D. 886, 5 B.R. 715 (Bkrtcy. W.D.Pa.1980).

9. That section reads as follows:

"Every contract or duty within this chapter imposes an obligation of good faith in its performance or enforcement."

10. See affidavit of Alan D. Wiener, Esq., GECC's attorney in charge of this loan.

11. The Committee has refrained from challenging GECC's choice of "presentation" by mail. Although the term presentation is not specifically defined in the U.C.C., it cannot be disputed that mailing is a commercially acceptable method of presentation. A survey of the offices of the Secretaries of State of Massachusetts, New York and New Jersey indicates that between ninety percent and ninety nine percent of all financing statements presented to those offices are received through the mails. See affidavit of Dennis J. Malenski, appended to GECC's answer.

The U.C.C. itself mandates a liberal construction to promote its underlying purposes and policies, including that of simplifying the law governing commercial transactions and of encouraging the expansion of commercial practices through custom and use. Section 1–102(2).

filing occurs, *i.e.*, upon presentation of the financing statement and tender of the proper fee *or* acceptance. The choice of the disjunctive "or" in the second clause clearly reveals that the contemplation of the U.C.C. is that filing be effective regardless of whether the officer receiving the controlling documents makes the right gestures of acceptance. And, what is equally clear is that the draftsmen of this legislation intended this result.

Prior law was not always clear as to whether a financing statement gave constructive notice from the time of presentation of documents or from their proper indexing. The U.C.C.'s draftsmen decided, therefore, to resolve this problem by adopting the concept that filing is constructive notice from the time of presentation. Anderson, *Uniform Commercial Code*, (2d ed. 1971) § 403:5. The official comments to the U.C.C. make clear that the secured party ought not bear the risk of the mode of indexing.

The official comment to U.C.C. § 9–407 is as follows:

"1. Subsection (1) requires the filing officer upon request to return to the secured party a copy of the financing statement on which the material date concerning the filing are noted. Receipt of such a copy will assure the secured party that the mechanics of filing have been complied with. *Note, however, that under Section 9–403(1) the secured party does not bear the risk that the filing officer will not properly perform his duties: under that Section the secured party has complied with the filing requirements when he presents his financing statement for filing and the filing fee has been tendered* or the statement accepted by the filing officer." (Emphasis added.) [12]

■ Accordingly, notwithstanding the notice filing system adopted by the U.C.C., the enactment of this section by the Massa-chusetts legislature reflects its policy decision that as between a secured party who has properly prepared and presented a financing statement, and the world, the secured party is protected. See, *Uniform Commercial Code Comments* to Section 9–403; U.C.C. § 9–403, Mass.Annot. Subsection (1). The secured party simply is not to bear the risk that the filing officer will not properly perform his duties.

"The cases are clear that a mistake by a clerk (sic) does not affect the perfection of the creditor's security interest where the financing statement presented was proper, even though no notice is given to subsequent creditors."

White & Summers, *Uniform Commercial Code* (2d ed. 1980) § 23–15. It is thus clear that the ministerial act of indexing plays no part in the matter of proper filing. Anderson, *Uniform Commercial Code*, (2d ed. 1971) § 9–403.5.

■ And, the authorities support the conclusion that the Committee has missed the mark. GECC did not have the obligation of overseeing the filing officer's prompt and proper handling of its financing statement after presentation, nor did it bear a continuing duty to ensure any performance. The cases leave no room to doubt this. See, *In re Royal Electrotype Corp.*, 485 F.2d 394 (3d Cir. 1973); *In re May Lee Industries, Inc.*, 380 F.Supp. 1 (S.D.N.Y.1974), *aff'd* 501 F.2d 1407 (2d Cir. 1974); *In re Fowler*, 407 F.Supp. 799 (W.D.Okla.1975); *In re Vaughan*, 4 U.C.C. Rep. 61 (Bankr.Ct.W.D.Mich. 1967); *In re Kann*, 6 U.C.C.Rep. 622 (Bankr. Ct.E.D.Pa.1969). And, as the statutory language and the legislative history are plain and unambiguous compelling these judicial results, that language must be regarded as conclusive, with the result that the Committee's challenge to GECC's security interest must be turned aside. ₁ *Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980).

---

12. As Judge Kaufman observed in *In re Yale Express System, Inc.*, 370 F.2d 433, at 437 (2d Cir. 1966), the official comments to the U.C.C. are powerful dicta not to be ignored.

Although the court is unaware of any decision which seeks to dilute this clear legislative mandate, the Committee insists there is authority to impose a duty of inquiry upon a secured creditor. It is the Committee's position that *In re Fidler*,[13] 24 U.C.C. Rep. 465 (D.C.Or.1978) compels the result sought, *i.e.*, that GECC had a continuing duty and rested on the statutory order of things at its peril. Although this case deals with a different set of circumstances, a careful reading indicates its holding is entirely consistent with the clear language of the statute.

In *Fidler*, the bank had mailed a financing statement, along with two cashier checks for $4.50 each, to the county clerk. One check was intended to cover the cost of a lien search, the other to cover the fee for filing a financing statement. Each check was appropriately identified. The check for the lien search was accepted by the clerk. However, the $4.50 check tendered as the filing fee was inadequate as the cost of filing was $6.00. An employee of the clerk's office wrote the bank of its error, informing it that the initial check would be held until the additional amount was received. The bank then sent the additional $1.50, but instead of identifying it as the balance of the filing fee, it was identified as allocable to the lien search.

Two years later the clerk returned the $4.50 check, advising the bank it had never paid the outstanding balance. In the meantime, the debtor had incurred a substantial number of secured and unsecured debts before filing its bankruptcy petition.

As this summary makes clear, *Fidler* is a case where the bank's own error in tendering the filing fee resulted in no perfection. Although the opinion does speak of a duty of inquiry, such discussion was merely dictum to underscore the bank's own negli-

gence. *Fidler* certainly does not indicate that any duty of inquiry is required when there has been a proper tender and presentation. To read into the law such a continuing duty to insure proper filing cuts against the grain of the U.C.C.'s language and is at war with the legislature's purpose in writing that language, and ignores the judicial gloss given that section. *In re May Lee Industries, Inc., supra*, at 3.

The U.C.C. is a carefully matured enactment designed to achieve needed reform in the world of commerce. Its avowed purpose was and is the codification, the simplification and the modernization of the laws governing commercial transactions. It should not be read in such way that the arcane uncertainties it sought to remove are reincarnated by the judiciary. In short, to reinstate under the general rubric of "good faith", a rejected duty to insure proper indexing would be to pervert the intendment of this comprehensive legislation.

As it is clear GECC properly filed financing statements with the Clerk of Attleboro, Massachusetts, and with the Secretary of that Commonwealth, GECC has a perfected security interest in the collateral owned by FFNE.

The Committee's motion is denied in all respects. It is so ordered.

---

13. Although the Committee also cites *In re D. G. & Associates*, 9 B.R. 94 (Bkrtcy.E.D.Tenn. 1981), in support of its position, that case is inapposite. It deals with a secured creditor's duty to refile after learning that the debtor has changed its name. Although the court imposed a duty to refile based upon the duty of good faith, U.C.C. § 1–203, it should be noted that the U.C.C. contains no such requirement. In fact, an amendment to the U.C.C. had proposed a duty to refile, arguably indicating no such duty then existed.