**In re Marvin W. DAVISON, Betty S. Davison, d/b/a Davison Enterprises, & Subsidiaries, Debtors.**

**Bankruptcy No. 83–00699–SW–1–11.**

United States Bankruptcy Court, W.D. Missouri, W.D.

June 2, 1983.

---

Marsha Duncan Laner, Kansas City, Mo., for debtor.

Howard Gosnell, Nevada, Mo., for Citizens State Bank of Nevada, Mo.

## MEMORANDUM OPINION AND ORDER

FRANK P. BARKER, Jr., Bankruptcy Judge.

This matter is before the Court pursuant to Debtors' Request for Determination of Secured Status of Citizens State Bank of Nevada, Missouri (Citizens). Debtors maintain that any security interest granted Citizens was never perfected. If unperfected, Citizens would be considered only an unsecured creditor of the estate. A hearing on the matter was held March 29, 1983. Since that hearing both parties have filed briefs in support of their respective positions. In addition, the debtors filed a reply brief to the brief by Citizens.

Citizens claims a security interest in all the footwear inventory in debtors' Missouri stores. Apparently that inventory has a value of at least $400,000 and perhaps more. Citizens' status is particularly important in this Chapter 11 proceeding because if they are found to be unsecured then the inventory will be available to the debtors to secure additional financing which the debtors maintain is necessary for a successful reorganization.

## FINDINGS OF FACT

The debtors challenge the validity of Citizens security interest on three (3) grounds. These are:

(1) The absence of debtor, Betty Davison's signature on the financing statement filed with the state and the failure to list Betty Davison as a debtor on that document;

(2) An incorrect listing of the debtors' business address on the financing statement, and;

(3) An alleged lapse in the five-year effective period of a continuation statement filed pursuant to § 400.9–403(3) to continue the effective period of the original financing statement.

At the hearing it was established that Citizens, in particular a bank officer named Chester Miller, has maintained a business relationship of some twenty (20) years duration with the Davisons. This relationship has primarily involved the Davisons as reflected in their business venture, Davison Enterprises. During that time Citizens has provided financing for the business, in the form of a $90,000 note, a $470,000 note, a $50,000 note and a $65,000 note. All of these notes were supported by security agreements. The security for all of the notes was the inventory purportedly covered by the financing statements at issue herein.

Debtor has pointed out that each and every one of the notes and the security agreements were signed by both Marvin and Betty Davison. Mrs. Davison is listed as a co-debtor on the security agreements and as a co-maker on two of the notes. On the security agreements accompanying the $90,000 note and the $470,000 note "d/b/a Davison Enterprises" immediately follows Mrs. Davison's signature. Each of the security agreements lists Mrs. Davison as a debtor and states that the debtor(s) owns the collateral. Both Marvin and Betty Dav-

ison are listed as signatories on all the bank accounts maintained for both personal and business use.

Mr. Miller testified that he primarily dealt with Marvin Davison and that he sometimes allowed Mr. Davison to take loan documents home to obtain Mrs. Davison's signature on them. He did not offer an explanation as to why this or some other procedure was not used to obtain her signature on the financing statement.

The debtors' address is listed on the financing statement and on the continuation statements as 118 North Cedar, Nevada, Missouri. The debtors' correct business address has apparently been 122½ North Cedar, Nevada, Missouri since sometime in 1975. Another business now operates at the 118 North Cedar address.

The original financing statement was filed with the State of Missouri on August 25, 1966. Continuation statements were filed on July 29, 1971; June 1, 1976 and August 11, 1981. The "proceeds" box is checked on the original financing statement.

## CONCLUSIONS OF LAW

█ It is the opinion of this Court that under Missouri law the failure of Citizens to obtain Betty Davison's signature on the financing statement and to list her as a debtor on that statement is fatal to the perfection of Citizens' security interest. Because that conclusion is all that is needed to reduce Citizens to unsecured status, it is really not necessary to consider the other two challenges raised by debtor to Citizens secured status. However, each will be briefly addressed before examining the fatal flaw itself. Although this matter is governed by Missouri law [see, *Matter of Kinney,* 16 B.R. 664 (Bkrtcy.W.D.Mo.1981)] when dealing with a uniform law, cases from other jurisdictions may properly serve as guidance. *Matter of Flagstaff Foodservice Corp.,* 16 B.R. 132, (Bkrtcy.S.D.N.Y.1981).

█ Under § 400.9–403(2) (R.S.Mo.1978) the effective period for a financing statement is five (5) years from the date of filing. If no proper continuation statement is filed the effectiveness of the financing statement lapses at the end of that period. § 400.9–403(3) allows for filing of a continuation statement at any time within six months prior to the expiration of the five-year period. This continuation statement continues the effectiveness of the original financing statement for five years after the last date to which the filing was effective. Debtor asserts the novel theory that the last date the filing was effective occurs on the date a continuation statement is filed. If this were true the 5 year 72 day period between the continuation statement filed June 1, 1976 and the one filed August 11, 1981 would result in a lapse in the effectiveness of the filing statement. If the five year periods are measured from the August 25 original filing date, then no lapse would have occurred. There is no Missouri case law which conclusively establishes this point one way or the other. However, debtors' construction, if adopted, could create an unexpected trap for creditors diligently filing continuation statements under § 400.9–403(3). If the legislature has intended such a result it should have been made clear in the statute or in some accompanying materials. This Court concludes that § 400.9–403(3) establishes that the effective period of a properly filed continuation statement should be measured from the end of the five year effective period of the original statement.

█ The incorrect address shown on the financing statement also does not support invalidating Citizens' security interest. The debtors have correctly stated the issue to be whether the incorrect address was substantially misleading in such a manner as to preclude the notice function served by financing statements. *Matter of Lucasa Intern., Ltd.,* 13 B.R. 600 (Bkrtcy.S.D.N.Y. 1981). Although there are circumstances in which an incorrect address might be substantially misleading enough to invalidate a financing statement, this does not appear to be such a case. Debtors were apparently, originally, in business at the address listed by Citizens. The address listed is in close

proximity to the debtors' correct address and both addresses are in a town with a population of approximately 10,000. Under the circumstances it is likely that any reasonable attempt to contact the Davisons at 118 North Cedar would result in contact at 122½ North Cedar. The incorrect address is not enough to warrant finding Citizens unperfected. See, *In re McCoy,* 330 F.Supp. 533 (D.C.Kan.1971) (applying Kansas law in discussing changes of address subsequent to a filing). This seems to be a minor error not seriously misleading under § 400.9–402(5), (R.S.Mo.1965). See, *In re Simpson,* 4 UCCRS 250 (F.Rd.W.D.Mich.1966).

■ Unfortunately for Citizens the same statement cannot be made concerning their failure to list Betty Davison as a debtor and to obtain her signature on the financing statement.

Citizens has asserted three grounds on which they maintain the financing statement properly perfected their security interest despite the omissions previously noted. First they suggest that Betty Davison is not an owner of the collateral under Missouri law. Second, they maintain that even if Mrs. Davison is considered to be an owner of the property, the evidence sufficiently establishes that her husband acted as her agent in signing the financing statement. Finally, they question whether the noted omissions would be enough to mislead any potential secured creditor of the Davisons. Each of these issues will be discussed in its turn.

A brief discussion of the debtors' position is necessary before considering the bank's challenge to that position. The debtors do not question the validity of the notes or the accompanying security agreements. The only question is whether Citizens' security interest was perfected under § 400.9–302 (R.S.Mo.1965) by the filing of this particular financial statement. The requirements for a financing statement are set out in § 400.-9–402 (R.S.Mo.1965). Of particular importance is the requirement in subsection (1) of that section that such a statement be "signed by the debtor". The term "debtor" is defined at § 400.9–105(1)(d) (R.S.Mo. 1963) as:

(d) "Debtor" means the person who owes payment or other performance of the obligation secured, whether or not he owns or has rights in the collateral, and includes the seller of accounts, contract rights or chattel paper. Where the debtor and the owner of the collateral are not the same person, the term *"debtor"* means the owner of the collateral in any provision of the article dealing with the collateral, the obligor in any provision dealing with the obligation, and may include both where the context so requires;

As noted earlier all four of the security agreements list Betty Davison under the heading of "debtor". It seems clear that Betty Davison, by signing the notes and security agreements, would qualify as a "debtor" under § 400.9–105. See, *Clune Equipment Leasing Corp. v. Spangler,* 615 S.W.2d 106, 108 (Mo.App.1981) (Court found the definition of debtor in § 400.9–105 to be broad enough to include guarantors. Reasoning on the breadth of the definition seems to support including Mrs. Davison in that definition). Under § 400.9–402 her signature and designation as debtor should have appeared on the financing statement.

Citizens apparently argues either that Betty Davison's signature was not necessary on the financing statement or that the failure to have that signature and list her as a debtor is a minor error which is not substantially misleading to such an extent that the financing statement is invalid.

Citizens' assertion that Betty Davison is not an owner of the collateral and that her signature is therefore unnecessary on the financing statement appears to misconstrue both Missouri law on tenancies by the entireties and the requirements of the U.C.C. itself. As is evident from the definition of "debtor" in § 400.9–105(1)(d) ownership of the collateral is not a prerequisite to being a debtor. See, *Clune Equipment Leasing Corp., supra.* Whether or not Betty Davison owned the inventory here, Citizens made her a debtor on all the obligations the collateral served to insure. The bank required her to sign the notes and security

agreements. She "owed payment or other performance of the obligation secured". Whether or not she owned the collateral § 400.9–402(1) requires her signature to be on the financing statement.

■ In any event, under Missouri law, Betty Davison clearly has ownership rights in the footwear collateral. In Missouri a presumption arises that personal property acquired by a husband and wife is held as tenants by the entireties. See, *Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Shackelford*, 591 S.W.2d 210, 213 (Mo.App. 1979). This presumption may be rebutted by a showing of a joint intention on the part of the husband and wife to create a different type of estate. *Merrill, Lynch, et al., supra.* Such a change in the character of the property may occur due to the consent, acquiescence or agreement of the parties. See, *Matter of Kinney, supra.* Citizens attempts to rely on *Kinney* in support of its assertion that Betty Davison is not an owner of this property. *Kinney* can, however, be distinque from the present case. In *Kinney* the wife testified as to a pattern of conduct in which the husband was responsible for the farming operations and she was responsible for household operations. In this case, although Mr. Miller testified that he dealt primarily with Marvin Davison, it was the bank that required Betty Davison to sign all the security agreements and notes. This was not true in *Kinney* where Mr. Kinney was the only one who signed the accompanying documents as well as the financing statement. The primary difference between this case and *Kinney* is that in the latter there was evidence before the court sufficient to rebut the presumption that the property was held in tenancy by the entireties. Despite Mr. Miller's testimony concerning his understanding of Mrs. Davison's limited role in the operation of Davison's Enterprises, there is no such evidence in this case. The fact that Betty Davison signed all the supporting documents serves to reinforce the presumption that the collateral was held as a tenancy by the entireties. See, *In re Kitrell*, 380 F.Supp. 587 (D.C.Mo.1974). Under Missouri law, Betty Davison is an owner of the collateral. Citizens is not perfected as to Mrs. Davison's interest in the property which, in a tenancy by the entireties, extends, indivisibly, to the entire property.

In *Kinney,* the court found that even if the entireties nature of the property had not been changed, sufficient evidence existed to establish an agency in the husband on behalf of his wife. Citizens argues that this is true also in the present case. Once again the evidence presented undermines this argument. In *Kinney* the wife testified that her husband handled all the commercial matters. She was not required to sign the security agreement nor was she even fully aware the tractor involved had been pledged. This was not the case with the Davisons. Betty Davison signed all the security agreements and notes. This is the only evidence before the Court as to her participation in the couple's commercial matters. If Marvin Davison suddenly presumed to act as Betty's agent in signing the financing statement there should be some evidence of such agency on the face of that document. Under Missouri law an agency will not be inferred merely because of the existence of a marital relationship. See, *Murphy v. Olds.*, 508 S.W.2d 249 (Mo.App. 1974); *Dickey Co., Inc. v. Kanan,* 537 S.W.2d 430 (Mo.App.1976) There is no such evidence. No evidence exists sufficient to support a finding of agency in this case.

Finally, Citizens argues that the omission of Betty Davison's name as a "debtor" and the failure to obtain her signature is a harmless error not likely to mislead any secured creditor. This argument, if accepted by this Court, would require the Court to, in effect, write the signature requirements out of the Code. See, *Southwest Bank of Omaha v. Moritz*, 203 Neb. 45, 277 N.W.2d 430 (1979). Betty Davison is clearly a "debtor" in this case. Citizens' own actions in requiring her to sign all of the supporting documents help to establish her in that status. As a "debtor" her signature is required on the financing statement. Citizens, for unexplained reasons, did not obtain that signature thus rendering the financing statement invalid. The legisla-

ture, in enacting § 400.9–402, made the judgment that the failure to obtain a debtor's signature on a financing statement is substantially misleading. It is not for this Court to find otherwise in this situation.

In conclusion, it is the finding of this Court that the absence of Betty Davison's signature and name on the financing statement is fatal to the perfection of Citizens' interest in the collateral. It is therefore,

ORDERED, that Citizens State Bank of Nevada, Missouri is an unsecured creditor in this bankruptcy proceeding.